## THE VILLAGE OF HYDE PARK

*v.*

## JOHN BORDEN *et al.*

1. SPECIAL ASSESSMENTS—*sufficiency of ordinance in describing sewer.* An ordinance for the construction of a sewer which names three several curves between two given points without giving the radius, as, for instance, after naming a point saying "thence curve until it intersects with a point" named,

where the curves are for very short distances and adapted to the purposes of the sewer, and can be properly located in one way only from the whole ordinance taken together, is not void for uncertainty.

2. SAME—*ordinance for sewer across private property.* If a sewer is constructed over private property with the knowledge of the owner, under an ordinance, and he makes no objection thereto and takes no steps to prevent the same, he will be thereafter estopped from making any claim to compensation, and the ordinance will not be void because the sewer is over private ground, and the collection of special assessments for its construction can not be defeated on this ground.

3. SAME—*requisites of ordinance in providing for compensation.* The statute does not require that an ordinance for the construction of a sewer by a municipal corporation shall make any provision for acquiring the right to make the improvement upon the property of others, but it provides that after the passage of an ordinance for an improvement, the making of which will require that private property be taken or damaged, then the city or village shall file a petition for the ascertainment of the compensation to be paid, if it can not be agreed upon by the parties.

4. SAME—*may be made before compensation is provided for property to be taken.* A city or village may make special assessments for a public improvement before the compensation to be paid for private property to be taken or damaged is ascertained

5. SAME—*may be made before right of way is acquired.* The collection of special assessments for the construction of a sewer can not be resisted on the ground that at the time of the adoption of the ordinance for the proposed improvement and of the making of the assessments, permission was not obtained to make the improvement over or through the lands of other corporate bodies, and permission from such bodies may be obtained afterwards and it will be good.

6. STREET—*on vacation land reverts to original owner.* Where a public street or avenue is vacated by competent authority, the land embraced within its limits will revert to the original owner who dedicated the same.

7. ESTOPPEL—*by acquiescence without objection.* Where the owner of land has full knowledge of the location of a street over the same, or of the construction of a sewer through the same by municipal authorities, and interposes no objection to the same, and takes no steps to prevent it, after the construction of the improvement he will be estopped from making any claim for compensation.

APPEAL from the Appellate Court of the First District; the Hon. THEODORE D. MURPHY, presiding Justice, and Hon. GEO. W. PLEASANTS and Hon. JOSEPH M. BAILEY, Justices.

This was an application made originally to the county court of Cook county, for confirmation of a special assessment made by the village of Hyde Park, for the cost of constructing a brick sewer in Forty-first street, from State street to Lake Michigan. The portion of the ordinance of the village of Hyde Park for the construction of said sewer, in dispute in the case, is as follows :

"*Be it ordained by the President and Board of Trustees of the Village of Hyde Park:*

"SECTION 1. That a brick sewer be constructed from Lake Michigan to a point seventeen feet east of the center line of State street, in the village of Hyde Park, the center line of which shall coincide with the center line of Forty-first street from said point seventeen feet east of the center line of State street to a point ten feet west of the center line of the east half of the north-west quarter of section 3, township 38 north, range 14 east of the third principal meridian; there curve until it intersects with said center line of the east half of said north-west quarter section 3, at a point four feet south of the center line of Forty-first street; thence east and parallel with the center line of said Forty-first street to a point in the west line of Grand boulevard; thence north-easterly until it intersects with the center line of Forty-first street at the east line of Grand boulevard; thence running along center line of Forty-first street to a point seven feet east of the center line of Langley avenue to south, if extended; thence north-easterly to a point on the west line of Cottage Grove avenue ten feet north of the center line of Forty-first street; thence north-easterly to a point on the east line of Cottage Grove avenue, and ten feet south of the center line of Forty-first street, east of said Cottage Grove avenue; running thence east and parallel to the center line of said Forty-first street to the west line of the west roadway of Drexel boulevard; thence curve until it intersects with a point twenty feet south of the south line of Forty-first street and fifty feet east of the west line of the west roadway of said boulevard; thence south-easterly

and parallel to said west line of west roadway of Drexel boulevard to a point thirty feet north of the north line of the Union Stock Yards railroad right of way; thence curve until it intersects with a point seventy feet east of the west roadway of Drexel boulevard, and nine and one-half feet north of the north line of the Union Stock Yards railroad right of way; running thence east and parallel to the south line of Cleaverville, being a subdivision of part of the northwest fractional quarter section 2, township 38 north, range 14 east of the third principal meridian, to a point thirty-five feet west of the west line of Michigan terrace; thence along a line at a right angle to the lines of the Illinois Central railroad right of way to the water's edge of Lake Michigan."

Mr. HENRY V. FREEMAN, for the appellant:

1. There is no such uncertainty in the ordinance in the use of the word " curve," without defining the nature or character of the curve, or its radius or location on the ground, as will operate against its validity. There is no discretion given in regard to the extent of the work, or the manner of its execution, so as to bring the case within the ruling in *Foss* v. *City of Chicago,* 56 Ill. 359. The curve must be adapted to the purpose prescribed in the ordinance—the purpose of a sewer. Constructed in any other way it would not meet the requirements of the ordinance. There can be but one proper way to construct the curve, and evidence was offered to show that it had been so constructed.

The objection to the ordinance may be considered as properly classified with that referred to in a late decision of this court: .

" The objection the ordinance does not direct how the pipe shall be laid, whether on top of the earth or under, nor how deep, is simply hypercritical, and needs no consideration." *The People* v. *Sherman,* 83 Ill. 167.

An engineer locating the sewer described in the ordinance would locate this curve in one way, and only one, and have no difficulty in so doing.

2.　If a party suffer a street to be opened through his land without objection, he can not afterwards interpose a claim for compensation.　He should insist upon his claim in due time, so that the corporation may vacate the ordinance, if it regards the assessment of damages as unreasonable.　*Curry* v. *Mt. Sterling,* 15 Ill. 320.

Here the owner, Cleaver, suffered the sewer to be built through his property without taking any steps to prevent it. He is estopped from making any claims against the construction of this sewer through Michigan terrace.

It needs no argument more than the mere statement to maintain that if Cleaver was estopped from making any defence by his own conduct, no other objector could urge Cleaver's trouble as his defence.

3.　It is no proper objection to the ordinance that it omits to make provision to ascertain the compensation to be made for private property which might be taken or damaged in the construction of the proposed improvement.　Nor was it essential to the validity of the ordinance that, at the time of its passage, the right should have been acquired to pass over the lands of third persons.　The matter of compensation could be fixed and the right to use private property acquired, after the adoption of the ordinance, and without reference to the prior want of action in that regard.

Mr. CONSIDER H. WILLETT, also for the appellant:

The ordinance is valid, and the use of the word "curve" does not make it void.　The practical language of ordinary contracts will satisfy the requirements of ordinances.　*The People* v. *Sherman,* 83 Ill. 165 ; *Rickets* v. *Village of Hyde Park,* 85 id. 110.

Cases upon which objectors rely, and which appellants claim are not obnoxious to the ordinance :　*Fox* v. *Chicago,* 56 Ill. 354 ; *Jenks* v. *City of Chicago,* id. 397 ; *Lake Shore and Michigan Southern Railroad Co.* v. *Chicago,* id. 454 ; *Bowen* v. *Chicago,* 61 id. 268 ; *Workman* v. *Chicago,* id. 463.

In law no permission was necessary from the Illinois Central Railroad Company in order to construct a sewer across their right of way.   Rev. Stat. 1874, page 222.

Mr. L. D. CONDEE, also for the appellant.

Messrs. MATTOCKS & MASON, Mr. JOHN P. WILSON, and Mr. CHARLES E. POPE, representing different objectors, the appellees, insisted the ordinance was void by reason of its uncertainty in the proper location or description of the "curve" to be made in the construction of the proposed sewer;—and urged various other grounds of objection to the assessment.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the First District affirming the decision of the Superior Court of Cook County, dismissing an application by the village of Hyde Park, which had been originally made to the county court of Cook county, for confirmation of a special assessment for the cost of constructing a brick sewer in Forty-first street, in said village, from State street to Lake Michigan.

The ordinance of the village of Hyde Park for the construction of the sewer, adopted Nov. 2, 1876, in its description of the course of the sewer names three several curves between two given points, without giving the radius of the curves,—as, for instance, after naming a point the description says, "thence curve until it intersects with a point," (naming it,)—such description occurring three times.

The course of the sewer as defined by the ordinance was through Michigan terrace, forty feet, a former public street in the subdivision of Cleaverville, in Cook county, made by Charles Cleaver, who made a plat of the subdivision according to the general statute in force on the first day of January, 1852, upon which plat Michigan terrace was shown as a public street.   Michigan terrace had been vacated by a private act of the legislature passed Feb. 16, 1865.   Private Laws, 1865, vol. 2, page 659.

32     VILLAGE OF HYDE PARK *v.* BORDEN *et al.* [Sept. T.

Opinion of the Court.

The course of the sewer was also across the right of way of the Illinois Central Railroad Company, and also across Drexel and Grand boulevards. Said boulevards are in the possession of the South Park Commissioners, and are three hundred feet wide; there being in the center of the boulevards North and South streets, being streets of the village of Hyde Park, which were taken and widened by the South Park Commissioners under the South Park acts.

A license was offered in evidence from the Illinois Central Railroad Company for the construction of the sewer across its right of way, and also a resolution from the South Park Commissioners granting permission to construct the sewer across Drexel and Grand boulevards.

The Appellate Court found:

That the ordinance was void for uncertainty in using the word "curve" without fixing the radius.

That Michigan terrace had been vacated and was private property, and that the construction of the sewer through forty feet of private property rendered the ordinance void.

That the Board of Trustees of Hyde Park had no power to order the construction of a sewer across the land occupied by the Illinois Central railroad, and that the license offered in evidence from the railroad company did not render the ordinance and the proceedings under it valid.

That the South Park Commission and its territory form a distinct municipal corporation from Hyde Park, and as the ordinance directed that the sewer should run through its property it was void, and that the objection was not cured by the resolution offered in evidence from the South Park Commissioners granting permission.

The exception taken by the objectors to the confirmation of the assessment because of the use of the word curve without fixing its radius, is on account of its uncertainty. It is said that two given points can be connected by an indefinite number of curves, and hence that there is an indefiniteness as to the extent of the work in this particular which, it is claimed, ren-

ders the ordinance void, under the decisions of this court in *Foss* v. *The City of Chica.,*, 56 Ill. 354, and other like cases. Ordinances the,, of the common council of Chicago, were held void because they left it to the discretion of the Board of Public Works to determine as to the mode, manner and extent of the improvement to be made, when the law on the subject of special assessments in the city of Chicago for public improvements had placed the responsibility of prescribing what improvements should be made, and the mode and extent of them, with the common council. It was said in *Jenks* v. *The City of Chicago*, 56 Ill. 398, that clothing the board with such a discretionary power the law did not warrant, and this court would not tolerate, because it opened the door to fraud and favoritism.

We can not think that such objection fairly lies with sufficient force to the ordinance in question here to affect its validity. The curves here are only for very short distances. The whole ordinance must be taken together. The curve described must be one adapted to the general purpose of such a sewer, and favorable to the ready passage of the sewer's contents. Constructed in any other way, it would not meet the requirements of the ordinance. We have reason to believe that an engineer, properly locating the sewer described in the ordinance, would locate the curves in only one way, and that without difficulty. In *The People ex rel.* v. *Sherman*, 83 Ill. 165, in respect to an ordinance for laying water-pipes, it was said: "The objection, the ordinance does not direct how the pipe shall be laid, 'whether on top of the earth, or under, nor how deep,' is simply hypercritical, and needs no consideration." And yet there was in that case a degree of uncertainty in the res, cts named.

Giving the radius of the curve in the present case would have been proper, and rendered the description more certain. But we do not view the omission of it, in the connection as described in the ordinance, as creating enough of indefiniteness in respect of the curves to bring the case within the prin-

3—94 ILL.

ciple of the decisions first above cited, and invalidate the ordinance.

If Michigan terrace had been vacated, the land within its limits reverted to Charles Cleaver, the original owner, who dedicated the street. *Gebhart* v. *Reeves,* 75 Ill. 301. The sewer had been constructed the greater portion of its extent. Cleaver had full knowledge of the construction of the sewer through Michigan terrace, and took no steps to prevent it, and made no objection thereto, to the authorities of Hyde Park. In *Curry* v. *Mount Sterling,* 15 Ill. 320, in relation to a town ordinance for the extension of a street through private property, it was said: "If he (the owner) claimed damages because of the extension of the street, it was incumbent on him to make known his claim. If a party suffers a street to be opened through his land without objection, he can not afterwards interpose a claim for compensation. He should insist upon his claim in due time, so that the corporation may vacate the ordinance, if it regards the assessment of damages as unreasonable;" citing *Ferris* v. *Ward,* 4 Gilm. 499; *County of Sangamon* v. *Brown,* 13 Ill. 207. Under these authorities, Cleaver would be estopped from making any claim for compensation because of the construction of the sewer through Michigan terrace.

As respects the construction of the sewer across the right of way of the Illinois Central Railroad Company, it is a provision of the general statute here applying that "the city council shall have power, by condemnation or otherwise, to extend any street, alley or highway over or across, or to construct any sewer under or through any railroad track, right of way, or land of any railroad company (within the corporate limits); but where no compensation is made to such railroad company, the city shall restore such railroad track, right of way or land to its former state, or in a sufficient manner not to have impaired its usefulness." Rev. Stat. 1874, p. 222, *eighty-ninth* power.

The railroad company, by a formal instrument in writing, executed under the seal of the company, of the date of March

3, 1877, granted permission to construct the sewer across the company's right of way; it suffered and permitted such construction to be made without objection; the superintendent of the railroad had charge of the construction of the sewer under the railroad tracks, and the railroad company had been assessed for the improvement, and had paid the assessment.

As to the construction of the sewer across Drexel and Grand boulevards of the South Park, permission was granted therefor by a formal resolution of the Board of South Park Commissioners, or there was the offer in evidence of such a resolution.

It is objected to these licenses granted by the Illinois Central Railroad Company and the Board of South Park Commissioners, that they were granted subsequent to the passage of the present ordinance and the making of the present assessment,—that the ordinance was void because it required the sewer to be constructed upon private property, and across boulevards of the South Park, without making any provision for acquiring the right to make the improvement upon such property,—and that the validity of the ordinance and assessment must be determined by the power of the village and the state of facts existing at the date of the passage of the ordinance, and the making of the assessment.

The statute does not require that the ordinance itself shall, when providing for an improvement, make any provision for acquiring the right to make the improvement upon the property of others. But it provides that after the passage of an ordinance for an improvement, the making of which will require that private property be taken or damaged, then the city or village shall file a petition praying that the just compensation for such taking or damage shall be ascertained by a jury. And the Eminent Domain act, which is to be taken in connection with this statute, provides that such proceedings for the ascertainment of compensation shall be instituted only in case the compensation can not be agreed upon by the parties

interested, or in case the owner of the property is incapable of consenting.

In the present case the consent of the railroad company and the South Park commissioners was secured before instituting any compensation proceedings, and rendering such proceedings unnecessary.

We do not understand that because private property can not be taken or damaged for public use without just compensation, that this compensation must first be ascertained before any assessment can be made for an improvement which may require such taking or damaging. This is not an assessment under section 53, article 9 of the statute, for the purpose of raising the amount necessary to pay the compensation or damages which might be awarded for private property taken or damaged. But it is an assessment for an improvement for which it was not certain that compensation would be required for the taking or damaging of private property, and, as the event shows, none was required.

The assessment then was for the cost of the improvement and the special benefit thereof to the property concerned; there has been the full enjoyment of the benefit, at least so far as pertains to the particular objections considered, and we perceive no sufficient reason why the assessment should not be enforced.

The permission granted for the construction of the sewer across the parcels of property of the railroad company and of the South Park we regard as entirely obviating the objections made on that account; and this, although the permission was not obtained until after the passage of the ordinance and the making of the assessment. That such permission did not go to the power to pass the ordinance or make the assessment.

Some of the facts which have been stated may only appear from the offer of evidence to prove them which was rejected. But we consider that all the evidence offered in the Superior Court should have been admitted, and have treated the evidence as in and making proof of the facts.

The judgment of the Appellate Court will be reversed, and the cause remanded to that court for further proceedings in conformity with this opinion.

*Judgment reversed.*