THE VILLAGE OF HYDE PARK

*v.*

FRANKLIN F. SPENCER *et al.*

*Filed at Ottawa November 13, 1886.*

1. DRAINAGE LAW—*constitutionality of the act of 1885.* The act of June 22, 1885, entitled "An act to vest the corporate authorities of cities and villages with power to construct, maintain and keep in repair, drains, ditches, levees, dykes and pumping works for drainage purposes, by special assessment upon the property benefited thereby," is not unconstitutional, but is a valid law.

2. The authority of the legislature to pass the act of 1885, relating to drainage, etc., in cities and villages, is not affected by section 9, article 9, of the constitution, but the power was conferred by the amendment to section 31 of article 4 of that instrument, adopted in 1878.

3. SAME—*powers of municipalities—and as to the selection of the mode and instrumentalities for the exercise of those powers.* The act of June 22, 1885, vests the corporate authorities of cities and villages with power to construct and maintain such drains and pumping works as are necessary for the purpose of draining lands within their corporate limits.

4. The legislature, in the exercise of the power conferred upon it by the constitutional amendment of 1878, is not restricted to the mode prescribed by the drainage acts of 1879, nor to the agencies and instrumentalities designated in those acts. The authorities of cities and villages may be made drainage commissioners, and empowered to determine what portion of the lands within such cities or villages shall be drained.

5. SAME—*formation of drainage district—in cities and villages.* Where city or village authorities have determined that a particular portion of the lands within the corporate limits needs draining, and have set the same apart, by ordinance or otherwise, as the district to be drained, they will have

thereby virtually organized a drainage district. In such case, no preliminary petition for the organization of the district by the owners of property is necessary.

6. ORDINANCE—*for local public improvements—sufficiency of ordinance as to the nature and description of improvement.* An ordinance for the making of a local public improvement by a city or village, to be paid for by special assessments, which fails to specify the nature, character, locality and description of the proposed improvement with sufficient certainty, is defective, and special assessments based thereon will be invalid.

7. Provisions in an ordinance for the construction of a sewer and pumping works in a village, that the wells or basins should be located upon a certain lot, "or upon some other suitable lot in the immediate vicinity of the one described;" that the lot described, or "some other suitable lot" in the same vicinity, etc., be purchased, and that there be erected suitable buildings, consisting of an engine-room, etc., "substantially as the same is delineated upon plans on file in the office of the village engineer," are all objectionable, in failing to comply with the requirements of section 19, article 9, chapter 24, of the Revised Statutes.

8. Such an ordinance is further defective if it does not specify, with sufficient definiteness and certainty, the location of the man-holes and man-traps, and fails to give any specifications from which the cost of the pumping engines and boilers, and their foundations, can be estimated.

9. MUNICIPAL CORPORATION — *mode of acquiring real estate.* The trustees of a village have no power to acquire a lot on which to locate buildings and pumping works for drainage purposes, except by proceedings to condemn, as provided in sections 3 and 4, article 9, chapter 24, of the Revised Statutes.

APPEAL from the County Court of Cook county; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Messrs. WILLARD & DRIGGS, for the appellant:

The act of 1885 is constitutional in its provisions as to maintenance and repair by special assessments. *White* v. *People,* 94 Ill. 604; *Blake* v. *People,* 109 id. 504; *Owners of Land* v. *People,* 113 id. 296; *Enos* v. *Springfield,* id. 65; *Falch* v. *People,* 99 id. 137; *Kilgour* v. *Drainage Comrs.* 111 id. 342; Dillon on Mun. Corp. (3d ed.) sec. 617.

The maintenance and repair of local improvements by special assessments may be authorized by law. Cooley on Taxation, 419, 420; *McCormac* v. *Patchin,* 53 Mo. 33; *Wil-*

*lard* v. *Presbury,* 14 Wall. 676; *Williams* v. *Detroit,* 2 Mich. 560; *Bradley* v. *McAtee,* 7 Bush, 667; *Cone* v. *Hartford,* 28 Conn. 363; *Williams* v. *Cammack,* 27 Miss. 209; *Alcorn* v. *Homer,* 38 id. 652.

No limit is set to the kind of local improvements that the legislature may authorize.

The cases holding that a local tax must not be against the will of the people, has no application to indebtedness to be paid by special assessment. *Craw* v. *City of Tolono,* 96 Ill. 255; *Owners of Land* v. *People,* 113 id. 296.

Authority for the passage of the act may be found in section 31, article 4, of the constitution. See, in this connection, *Blake* v. *People,* 109 Ill. 505.

The ordinance is legal and sufficient in all respects. *Levy* v. *Chicago,* 113 Ill. 650; *People* v. *Sherman,* 83 id. 165.

Mr. Franklin P. Simons, and Messrs. Doolittle & McKey, for part of the appellees:

The legislature has no power to authorize the levying of special assessments to maintain or keep in repair public improvements. Const. 1870, art. 9, sec. 9.

The amendment of the constitution, in respect to drainage, was not intended to embrace cities, towns and villages. That amendment recognizes the right of the People to form the district, to select their officers, or in some manner consent to and approve the body assessing them. *Updike* v. *Wright,* 81 Ill. 49; *Harward* v. *St. Clair Drainage Co.* 51 id. 130.

That power to make an improvement does not include power to maintain it by special assessment, see *Board of Water Comrs.* v. *Conkling,* 113 Ill. 341.

Ordinances for public improvements by special assessments must specify the nature, character, locality and description of the improvement, including the material. Hurd's Stat. 1885, chap. 24, sec. 134; *Levy* v. *Chicago,* 113 Ill. 650.

Messrs. GOUDY & GREEN, also for the appellees.

Mr. EDWARD ROBY, also for part of the appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

In December, 1885, the village of Hyde Park passed an ordinance providing for the construction of a sewer and pumping works on Sixty-third street, together with an outlet pipe, and for the maintenance and repair of the same. Section 1 provides that a brick sewer shall be constructed in Sixty-third street, to be connected with wells or basins, to be located on a lot or parcel of land (describing it), or upon some other suitable lot in the immediate vicinity of the one above described; that forty man-holes shall be built upon said sewer, upon such points as the engineer in charge may direct; that thirty-two catch-basins shall be constructed, and connected with said sewer with nine-inch vitrified tile-pipe, located at such points on the curb line of said street as the engineer in charge may direct; that a lot or parcel of land be purchased for the location of suitable buildings and pumping works for drainage purposes, described as follows, (describing it,) or that some other suitable lot in the immediate vicinity of the lot above described, be purchased, as aforesaid; that upon the lot to be purchased as above, there be erected suitable buildings, consisting of an engine-room, boiler-room and coal-room, and stack, substantially as the same is delineated upon plans on file in the office of the village engineer; that suitable pumping engines and boilers be purchased, and erected upon suitable foundations inside of the said buildings, connected by wells or basins, into which the Sixty-third street sewer, heretofore described, shall discharge; that a cast-iron pipe be laid from said pumps along Sixty-third street, Stony Island avenue and Fifty-sixth street, to Lake Michigan; that a sufficient sum be levied and collected for maintaining the pumping works contemplated by this ordinance, and for keeping

29—118 ILL.

the same in repair for the term of one year from the completion of the same. Section 2 provides, that the cost and expenses of the improvement shall be defrayed by special assessment to be made in accordance with sections 18 to 51 inclusive in article 9 of "An act to provide for the incorporation of cities and villages," approved April 10, 1872. Section 3 appoints commissioners to make an estimate of the cost. Section 4 provides, that, for the purpose of the improvement aforesaid, the territory, lying within the following boundary lines, is hereby declared to be a drainage district, (describing it,) "the said proposed improvement being deemed adequate only to the proper drainage of the territory aforesaid."

The commissioners, appointed by the ordinance to estimate the cost of the proposed improvement, made their report to the board of trustees, and estimated the total cost at $116,000, composed of the following items:

Cost of main sewer, with wells, man-holes, catch-
    basins, house connections, slants, etc.   -   - $44,000
Cost of land   -   -   -   -   -   -   -   2,600
Cost of engine building, etc.   -   -   -   -   10,000
Cost of engines and boilers   -   -   -   -   30,000
Cost of cast-iron outlet pipe   -   -   -   -   23,000
Cost of one year's maintenance of said pumping
    works -   -   -   -   -   -   -   -   4,000
Cost of making and levying and collecting the as-
    sessment   -   -   -   -   -   -   -   2,400

     Total cost, as estimated   -   -   - $116,000

The report was adopted by the board, and, by its order, a petition was filed in the county court of Cook county, on December 23, 1885, by the village of Hyde Park by the president of its board of trustees, setting forth the ordinance, the report and the order, above mentioned, and praying, that the cost of said improvement might be assessed in the manner

prescribed by law. The court appointed commissioners to make the assessment, who took the oath. The assessment roll was returned into court, and, on January 11, 1886, a rule was entered, giving ten days, within which objections might be filed. Various objections were filed by the appellees, and, after hearing, the county court dismissed the proceeding. From such order of dismissal the village prosecutes its appeal to this court.

The act of the legislature, under which the proceeding was instituted, is as follows:

"An act to vest the corporate authorities of cities and villages with power to construct, maintain and keep in repair drains, ditches, levees, dykes and pumping works for drainage purposes, by special assessment upon the property benefited thereby, approved June 22, 1885, in force July 1, 1885.

"Sec. 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That the corporate authorities of cities and villages are hereby vested with power to construct drains, ditches, levees and dykes, to erect pumping works, and to acquire the necessary land and machinery for such purposes, and otherwise to provide for draining any portion of the lands within their corporate limits, by special assessment upon the property benefited thereby.

"Sec. 2. That the corporate authorities of cities and villages are hereby vested with the power to maintain and keep in repair such drains, ditches, levees, dykes, pumping works and machinery, and such drainage improvement, by special assessment upon the property benefited thereby: *Provided,* that no lot, block, tract or parcel of land shall be assessed more than once in any one year for such maintenance and repair.

"Sec. 3. All the proceedings for the making of the improvements in this act mentioned, and for the maintenance and repair thereof, and for the levy and collection of the special assessments to defray the cost of the same, shall be in accord-

ance with the provisions of article 9 of the general act for the incorporation of cities and villages, approved April 10, 1872."

The main objection, urged by appellees, is, that the act of 1885 is unconstitutional. The second section of the act confers "the power to maintain and keep in repair," etc. It is said, that section 9 of article 9 of the constitution, by the terms of which, "the General Assembly may vest the corporate authorities of cities, towns and villages with power to *make* local improvements by special assessment," etc., does not vest such authorities with power to *maintain* local improvements. It is claimed, that the power to *make* improvements does not include the power to *maintain* them. The item of $4000 for "one year's maintenance of said pumping works" is, therefore, objected to, as improperly included by the commissioners in their estimate of the cost of the improvement. Counsel contend, that, inasmuch as the second clause of section 9 of article 9 of the constitution provides, that "*for all other corporate purposes,* all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property, within the jurisdiction of the body, imposing the same," the maintenance of the pumping works, if a corporate purpose at all, must be paid for out of funds, raised by general taxation, and not by special assessment.

We do not deem it necessary to discuss the position, thus taken by appellees, for the reason, that, if the legislature had the authority to pass the act of 1885, such authority must be referred, not to section 9 of article 9 of the constitution, but to another and entirely different provision of that instrument. An amendment to section 31 of article 4 of the constitution was adopted by a vote of the people in 1878. That section, as thus amended, reads as follows: "The General Assembly may pass laws permitting the owners of lands to construct drains, ditches and levees, for agricultural, sanitary or mining

purposes, across the lands of others; and provide for the organization of drainage districts, and vest the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby."

In *Moore, Ex'x.* v. *The People*, 106 Ill. 376, in discussing the constitutionality of the Drainage act of 1879, we said: "The act, under which the proceedings were had, was passed under the authority of this amendment, and authorized by it, and, if sections 1, 9 and 10 of article 9, ever had any bearing upon an assessment of this character, after this amendment became a part of the organic act, it would control, regardless of the provisions of the original constitution."

The title of the act of 1885 describes it, as an act to vest the corporate authorities of cities and villages with power to construct, maintain, etc., drains, etc., and pumping works *for drainage purposes.* The purposes, for which such authorities are to maintain drains and pumping works, are *drainage purposes* and no other. By section 1 of the act, they are vested with power to construct drains, etc., to erect pumping works, and to acquire the necessary land and machinery for such purposes, "and *otherwise* to provide for draining any portion of the lands within their corporate limits." The word "*otherwise*" relates back to the clauses preceding it, so that the construction of drains, the erection of pumping works and the acquirement of lands and machinery are merely designated, as modes of providing for the drainage of the lands. By the second section, the authorities are vested with power to *maintain*, etc., "*such*" drains and pumping works, etc. The word, "such," relates back to the previous section, so that the drains and pumping works, etc., which are to be "*maintained*," are those only, which are used for the purpose of draining lands within the prescribed boundaries. Hence, the act of 1885 vests the corporate authorities of cities and villages with

power to construct and maintain such drains and pumping works, as are necessary for the purpose of draining lands within their corporate limits.

The constitution authorizes the legislature to "provide for the organization of drainage districts, and vest the corporate authorities thereof with power to construct and maintain drains," etc. The act of 1885 does not formally provide for the organization of drainage districts, but, recognizing cities and villages, as already organized, provides for draining lands within the territory, covered by and coëxtensive with the corporate boundaries of such organizations. It creates no new officers for the purposes of effecting the drainage of such lands, but confers upon the corporate authorities, already existing, the power of taking such measures, as are necessary to drain any portion of the said lands.

In *Kilgour* v. *Drainage Commissioners*, 111 Ill. 342, we held, that the legislature had the constitutional power to enact, that the highway commissioners of a township should also be drainage commissioners of the township, and that such an enactment was not the assumption of an appointing power by the legislature. We there said, in reference to the amendment of section 31 of article 4 of the constitution: "This general grant of power, being unrestricted in terms, carries with it, by necessary implication, all other powers, necessary to make the general grant effective, and to accomplish the results intended. As to the mode, in which this power is to be exercised, the legislature is left the sole judge. Numerous instances might be referred to, in which the legislature has imposed new duties upon officers, already elected, where the duties of such officers are not fixed by the constitution, and the constitutionality of such enactments would seem to be unquestionable."

In *Huston et al.* v. *Clark et al.* 112 Ill. 344, where one of the points made was, that the organization of the drainage district was the act of the county court, and not of the people,·

residing therein, and that the drainage commissioners were not elected by the people, we said, in reference to the language of the amendment, now under consideration: "In this there is no limitation upon the legislature as to the mode of forming of such districts, or as to the agencies or instrumentalities to be used in their creation. * * * The constitutional provision does not require, that the corporate authorities, who may exercise this power, shall be elected by the people of the district. The special amendment of the constitution, adopted in 1878, so far as it invades the former limitations of the constitution, must prevail, and such limitations are not applicable to the subject matter of this special amendment."

Again, in *Owners of Lands* v. *The People*, 113 Ill. 296, a provision of the Drainage law, that "the county commissioners, in counties not under township organization, shall be the drainage commissioners in and for their respective counties," was held to be constitutional, and we there said: "Power to provide for the organization of drainage districts plainly carries with it, as an indispensable incident, power to declare what shall be the corporate authorities of those districts, and it is *such* corporate authorities,—not corporate authorities elected by the voters of the drainage district alone—who are to be vested with power to make the improvements by special assessment. * * * Cities, towns and villages may be vested with power to make local improvements by special assessments, * * * but it was never supposed, in such cases, that the proposed improvement must, to be valid, be territorially coextensive with the municipal authority, under which it is made. * * * It would, in all cases, be extremely difficult and, in many cases, impossible, to prescribe a district, by law, in which corporate officers should be elected, with the exact boundaries of the beneficial influence of a drain or levee, in advance of the legal ascertainment, by judicial trial or otherwise, of what property is specially benefited by such drain or levee. * * * No clause of the constitution

prohibits the making the county commissioners the corporate authority for every drainage district in the county, although they are elected by the votes of others in the county, as well as of those of this drainage district."

Under these authorities, the legislature is not restricted in its exercise of the power, conferred upon it by the amendment of 1878, to the mode prescribed by the Drainage acts of 1879, nor to the agencies and instrumentalities, specially designated in those acts. If, in certain counties, highway commissioners may act, as drainage commissioners for their respective townships, and, in certain other counties, county commissioners may act, as drainage commissioners for their respective counties, there is no reason why the legislature may not designate the corporate authorities of cities and villages to act, as drainage commissioners for their respective cities and villages.

It is true, that the act of 1885 does not specifically state, that such authorities shall act, as drainage commissioners, but, practically and in effect, it constitutes them such by imposing upon them the duties, which naturally belong to such officials. The Drainage act of 1879 provides, that the drainage commissioners, therein named, shall, after petition by a certain number of owners of the lands in the proposed district, "enter on their record an order in writing organizing said drainage district." The act of 1885, by providing, that the authorities of cities and villages shall have the power "to provide for draining *any portion* of the lands within their corporate limits by special assessment," etc., thereby necessarily confers upon such authorities the power to determine *what portion* of such lands shall be drained. When they have determined, that a particular portion of the lands needs draining, and have set the same apart, by ordinance or otherwise, as the district to be drained, they have thereby virtually organized a drainage district.

Inasmuch as, under the decisions cited, the officers, who are charged with the duty of constructing and maintaining

these drains, are not required to be elected by the people of the drainage districts, we see no reason why, as a mere question of power, the legislature may not authorize the corporate authorities of cities and villages to organize drainage districts, within their respective territories, as well without, as with a preliminary petition for such organization from the owners of property, to be drained. No clause of the constitution prohibits the making such authorities the corporate authorities for every drainage district within their respective cities or villages. As the improvement is to be made by special assessment, its cost can not exceed the benefits to be derived from it, and, hence, the exact boundaries of a drainage district can not always be prescribed by law, "in advance of the legal ascertainment, by judicial trial, or otherwise, of what property is specially benefited by such drain." Therefore, we see no objection to that feature in the act of 1885, which leaves it to the city or village authorities to determine what part of their lands may need draining, or, in other words, which leaves it to them to declare, by ordinance or otherwise, what portion of their territory shall be a drainage district.

We are of the opinion, that the act in question is not unconstitutional.

It is objected to the ordinance, that it does not specify "the nature, character, locality and description" of the improvement, as required by section 19, article 9 of chapter 24 of the Revised Statutes. A similar objection was considered by us in *Levy* v. *City of Chicago,* 113 Ill. 650, and *City of Sterling* v. *Galt,* 117 id. 11. Upon the authority of the views expressed in those cases, we think this objection is well taken. The provisions of the ordinance, that the wells or basins are to be located upon a certain lot, "*or upon some other suitable lot* in the immediate vicinity of the one described," that the lot described, *or "some other suitable lot* in the immediate vicinity"* etc., be purchased, that there be erected suitable buildings, consisting of engine-room, boiler-room etc., "*sub-*

*stantially as the same is delineated upon plans* on file in the office of the village engineer," are all objectionable, as not complying with the requirements of section 19. The ordinance is also defective in not specifying, with sufficient definiteness and certainty, the location of the man-holes and man-traps, and in giving no specifications, from which the cost of the pumping engines and boilers and their foundations can be estimated.

The objection to the ordinance, that it provides for the *purchase* of a lot, is also well taken. The trustees had no power to acquire such a lot for such a purpose otherwise than by condemnation, as provided for in sections 3 and 4 of article 9, above mentioned. We understand the counsel for appellant to admit, that the passage of another ordinance will be necessary, in order to acquire the lot in question.

Counsel for appellees are correct in stating, that, under article 9 of the act of 1872 for the incorporation of cities and villages, it is the duty of the commissioners, appointed by the county court, to determine what lands are benefited by the proposed improvement and to assess such lands. But we do not think, that, under section 4 of the ordinance, the board of trustees usurps the functions of such commissioners. That section merely limits the area of the territory to be drained.

Without considering any other of the objections, which are urged against the validity of the ordinance, we think, that the county court properly dismissed the proceeding on account of the objectionable features of the ordinance, that are here indicated. The order of dismissal, entered by the county court, is, therefore, affirmed.

*Order affirmed.*