### THE MAYWOOD COMPANY *et al.*

*v.*

### THE VILLAGE OF MAYWOOD.

*Filed at Ottawa January 18, 1892.*

1. SPECIAL ASSESSMENTS—*extending sewer beyond corporate limits.* A city or village, under its express power to construct local improvements, may make a sewer in its streets with an outlet or an extension beyond the corporate limits, when the same is necessary, following *Shreve* v. *Town of Cicero,* 129 Ill. 226.

2. SAME—*power to condemn land beyond corporate limits.* Where an ordinance for the making of a sewer in a city or village with an outlet extending beyond the corporate limits, requires the taking or damaging of private property beyond such limits, the power to condemn such property is expressly given by section 4 of the act relating to cities and villages.

3. The general rule that a municipal corporation can only exercise its powers within its corporate limits, is founded on the fact that generally no authority is given by its charter to act beyond such limits. Hence, corporate authorities are restricted in that regard, as in all other attempts to exercise corporate authority, by the general rule that they can exercise only such powers as are granted by express words. This general rule is subject to the qualification that such authorities may also do those things which are necessarily or fairly implied in or incident to the powers expressly granted.

4. SAME—*before acquiring right of way.* An assessment for the purpose of constructing a sewer, before the corporate authorities have acquired the right of way over private property, by condemnation or

otherwise, will be valid. The necessary steps to condemn may be taken after the assessment of benefits has been made and confirmed.

5. Same — *description of improvement essential to valid ordinance.* No ordinance for a local improvement by special assessment is valid which does not describe the improvement contemplated, and if in that description it shows an attempt to do that which it is not authorized to do, the ordinance is void on its face.

6. Same — *instruction as to form of verdict.* On the trial of an application of a village for the confirmation of a special assessment, the court instructed the jury, that if they found the issues for the petitioner, the form of their verdict should be, "We, the jury, find the premises of objectors are not assessed more or less than their proportionate share of the cost of the improvement, and that they are not assessed more or less than they will be benefited by the proposed improvement:" *Held,* that the instruction was not subject to the objection that it took from the jury the right they had, under the statute, to reduce the assessment against the objectors' property, and was not erroneous. Such an instruction does not indicate the form of the verdict in case it was against the petitioner.

7. Same — *new trial in proceedings to confirm.* Where the jury, in a proceeding to confirm a special assessment for a local improvement, view the property sought to be assessed, and the location of the improvement, after which they are fairly instructed as to the law, and they sustain the assessment as made by the commissioners, a new trial will not be granted unless the verdict is clearly against the weight of the evidence.

8. Practice — *misconduct of counsel.* Where counsel, in the selection of a jury and in the examination of witnesses, makes improper remarks and statements calculated to prejudice the jury, the court should promptly sustain objections thereto; and this court, in a doubtful case, will reverse the judgment for that cause, notwithstanding the court instructs the jury to disregard such remarks and statements, but not when the verdict shows that the jury were not prejudiced.

Appeal from the County Court of Cook county; the Hon. Frank Scales, Judge, presiding.

Mr. Elbert H. Gary, and Mr. William Garnett, Jr., for the appellants:

The verdict and judgment are contrary to a clear preponderance of the evidence.

As to the improper remarks and statements of counsel for the appellee, see *Railroad Co.* v. *Fletcher,* 128 Ill. 626; *Hen-*

*nies* v. *Vogle*, 87 id. 242; *Chase* v. *Chicago*, 20 Bradw. 274; *Railroad Co.* v. *Bragonier*, 13 id. 470; *Railroad Co.* v. *Johnson*, 116 Ill. 210; *Tucker* v. *Henniker*, 41 N. H. 317; *Scripps* v. *Riley*, 35 Mich. 371; *Brown* v. *Swineford*, 44 Wis. 282; *Rolfe* v. *Rumford*, 66 Me. 564; *State* v. *Smith*, 75 N. C. 306; *Ferguson* v. *State*, 49 Ind. 33; *Insurance Co.* v. *Rubin*, 79 Ill. 409; *Railroad Co.* v. *Winslow*, 66 id. 222.

The assessment being made on the basis that the sewer will be completed across the private property of the Barton estate, is erroneous, and the rulings of the trial court in relation to the same furnish grounds for reversal.

To establish the claims that the village could not lawfully acquire any right in the Barton property by contract, that it could not accept a deed, and that any arrangement concerning it would be *ultra vires*, the following cases are cited: Dillon on Mun. Corp. sec. 381; *Chicago* v. *Shepard*, 8 Bradw. 602; *Corwith* v. *Hyde Park*, 14 id. 635; *Dart* v. *Hercules*, 57 Ill. 446; *Marshall County* v. *Cook*, 38 id. 50; *Smith* v. *Railroad Co.* 67 id. 191; Mills on Eminent Domain, secs. 87, 88; *Petersburg* v. *Metzker*, 21 Ill. 205; *Springfield* v. *Edwards*, 84 id. 634; *Spalding* v. *Lowell*, 23 Pick. 11.

The ordinance is invalid because it does not establish a drainage district. *Hyde Park* v. *Carton*, 132 Ill. 100; *Hyde Park* v. *Spencer*, 118 id. 446.

Mr. Richard Prendergast, and Mr. Charles E. Pickard, for the appellee:

That the right of entry upon and use of grounds for the construction of sewers need not necessarily be in the village before the levying of the assessment, is abundantly demonstrated by the decisions of this court. *Hyde Park* v. *Borden*, 94 Ill. 26; *Leman* v. *Lake View*, 131 id. 388; *Holmes* v. *Hyde Park*, 121 id. 128; *Hunerberg* v. *Hyde Park*, 130 id. 156.

Appellants contend "that the ordinance in question is invalid because it does not establish a drainage district," and

cite in support of this proposition *Hyde Park* v. *Spencer,* 118 Ill. 446, and *Hyde Park* v. *Carton,* 132 id. 100. These cases were decided under a different statute, the improvement here being a sewer.

The instructions of the court to the jury to disregard the remarks of counsel did away with the supposed harm. So far as the proceedings during the examination of jurors are complained of, the complaint is groundless. *Fry* v. *Bennett,* 3 Bosw. 200; 28 N. Y. 324; *State* v. *O'Neal,* 7 Ired. L. 251; *Melvin* v. *Earley,* 1 Jones' L. 386; *State* v. *Zimmerman,* 7 Mo. App. 526; 86 Mo. 111; *McLendon* v. *Frost,* 57 Ga. 449.

When the verdict is clearly sustained by the evidence, improper remarks will not call for a reversal. *Epps* v. *State,* 102 Ind. 540; *Heyl* v. *State,* 109 id. 594; *Baysinger* v. *People,* 115 Ill. 419; *Palm* v. *State,* 14 Neb. 540.

Even in a criminal case, where the record shows that substantial justice has been done, this court will not reverse for slight errors. *A fortiori,* such will not be done in civil cases.

Side-bar remarks and efforts to win the jury are not grounds for a new trial. Objections to such are regarded frivolous, especially when substantial justice is done by the verdict. *Haderlein* v. *Railroad Co.* 3 Mo. App. 601; *State* v. *Hooper,* 70 Mo. 425; *State* v. *Guy,* 69 id. 430; *Donodell* v. *Wilcox,* 64 Iowa, 721; *State* v. *Griffin,* 87 Mo. 608; *Baker* v. *Madison,* 62 Wis. 137; *State* v. *Hamilton,* 55 Mo. 520; *Cobb* v. *State,* 27 Ga. 649; *State* v. *Comstock,* 20 Kan. 650; *State* v. *Mallon,* 75 Mo. 355; *Railroad Co.* v. *Gurley,* 76 Tenn. 46.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

This was a proceeding in the court below to levy a special assessment, by the village of Maywood, to pay for a brick sewer on one of its streets, with certain laterals. On the coming in of the commissioners' report making the assessment, appellants filed objections, upon which they resisted the con-

firmation of the assessment roll.    Several of these objections
were overruled by the court, without submitting them to a
jury, no question of fact being raised by them.    The trial be-
fore the jury was confined strictly to the issue whether or not
the proposed sewer would benefit the property of the objectors
more or less than the amount assessed against it, and whether
such property had been assessed more or less than its propor-
tionate share of the cost of the improvement.

The sewer is described in the ordinance providing for its
construction as running on one of the streets of the village,
east and west across the village, and extending from the east-
erly boundary thereof fifteen hundred feet, over private prop-
erty, east to the Desplaines river, with laterals, etc.    It is
insisted by appellants that no right of way for this easterly
extension has been or can be obtained by the village author-
ities, and therefore the whole proceeding is illegal, the position
being that the corporate authorities of a city or village can ex-
ercise no power beyond its limits in the construction of a local
improvement like the one in question, our statute conferring
upon them no such right.    The village, in this case, claims
the right to pass over the private property east of its limits by
deed from the owner, but whether it has such right or not, in
our opinion, is immaterial as to the validity of the assessment
in question.    The simplest form in which the question raised
can be considered is, can a valid ordinance be passed by a
village to extend a sewer beyond its limits?    No ordinance for
a local improvement is valid which does not describe the im-
provement contemplated, and therefore if in that description
it shows an attempt to do that which it is not authorized to
do, the ordinance is void on its face.

The general doctrine that a municipal corporation can only
exercise its powers within its corporate limits is conceded.
The rule is founded on the fact that, generally, no authority
is given by their charters to act beyond such limits, and hence
corporate authorities are restricted in that regard, as in all

other attempts to exercise corporate authority, by the general rule that they can exercise only such powers as are granted by express words.  This general rule has, however, the qualification that such authorities may also do those things which are "necessarily or fairly implied in or incident to the powers expressly granted."  We have already decided that a village may lawfully extend its sewers beyond its limits for the purpose of securing a suitable outlet for the same.  (*Shreve et al.* v. *Town of Cicero,* 129 Ill. 226·; *Cochran et al.* v. *Village of Park Ridge,* 138 id. 295.)  In such case the improvement is within the corporate limits, and for the exclusive use and benefit of the municipality.  The extension and outlet only serve the purpose of giving practical effect to the sewer or system of sewerage.  No one will deny that a sewer in a city or village is a local improvement, within the meaning of section 1, article 9, chapter 24, of the Revised Statutes.  Hence, the power to construct it under the provisions of that article is expressly given, and the right to also provide suitable outlets for the same, even outside of its boundaries, must result by fair and necessary implication, otherwise the express power would in many instances be unavailing.  *Shreve et al.* v. *Town of Cicero, supra; Cochran et al.* v. *Village of Park Ridge, supra; City of Coldwater* v. *Tucker,* 36 Mich. 471 ; Am. Rep. 601.

If our conclusion in the *Shreve* and *Cochran cases* is adhered to,—and no reason is shown why it should not be,—it must follow that the objection that the right of way for a sewer beyond the village limits can not be obtained by the corporate authorities, is without force.  The ordinance providing for the improvement, with the extension and outlet, being valid, and it requiring the taking or damaging of private property beyond the village limits, the power to condemn such property is expressly given by the statute.  (Rev. Stat. sec. 4, art. 9, *et seq.*) Whether that right had been exercised, or the right of way otherwise obtained, at the time the assessment was made, could make no difference as to the validity of the assessment.

(*Hyde Park* v. *Borden*, 94 Ill. 26; *Holmes* v. *Hyde Park*, 121 id. 129; *Hunerberg* v. *Hyde Park*, 130 id. 156.) These authorities also dispose of the objection that no right to cross. one of the blocks in the village limits had been obtained.

An attempt is made to bring both of these objections within the decision in *Hutt et al.* v. *Chicago*, 132 Ill. 352. It need scarcely be suggested that the question here raised was not involved in that case, and that it does not conflict in the least with the above cited decisions. There, an attempt was made to assess benefits to property to accrue by an improvement,— viz., the building of a bridge,—which was not contemplated by the ordinance under which the assessment was attempted to be made. Here, the improvement is one which the village may lawfully make, and has provided for by ordinance, and as we have seen, has the power to obtain the right of way for. The necessary steps to condemn, as we have frequently held, may be taken after the assessment of benefits has been made and confirmed.

Another objection urged against the ordinance is, that "it does not establish a drainage district." This objection seems to be based on *Hyde Park* v. *Spencer*, 118 Ill. 446, and *Hyde Park* v. *Carton*, 132 id. 100, both of which cases passed upon the questions there involved, under the act of June 22, 1885, entitled "An act to vest the corporate authorities of cities. and villages with power to construct, maintain and keep in repair drains, ditches, levees, dykes and pumping works, for drainage purposes, by special assessment upon the property benefited thereby." If we are correct in what has already been said, this improvement is fully authorized by article 9, chapter 24, above cited. The power to construct is conferred by that statute, and is in no sense dependent upon the act of 1885. The authorities cited have therefore no application whatever.

The remaining objections and grounds of reversal urged upon our attention grow out of the proceedings before the jury.

The verdict of the jury on the issues submitted to it sustained the assessment as reported by the commissioners, and the court, after overruling objectors' motion for a new trial, entered judgment accordingly. It is insisted that the verdict and judgment are contrary to the evidence. The evidence is conflicting, but we think fairly preponderates in favor of the verdict. There is nothing whatever in the record tending in the slightest degree to impeach the fairness and impartiality of the commissioners who made the assessment.

While serious objections are urged to the methods resorted to by counsel for the village in the impaneling of the jury, and we think rightfully, yet to the jury as finally sworn to try the case no complaint is made. After being sworn they were sent, in charge of an officer, to view the location of the proposed sewer and all the property described in the assessment roll, objectors as well as petitioner consenting. After hearing the evidence on both sides, they were instructed, on behalf of objectors, that in making their verdict they should take into consideration "such facts as they learned by such view, the same being in the nature of evidence, and to be considered as such." The jury was thus directed to consider a class of evidence,—often the most convincing in its character,—which we can not weigh at all. Therefore, without reference to our conclusion as to the weight of the other testimony, the verdict ought to be sustained. The personal examination of the three commissioners and that of the twelve jurors resulting in the same conclusion, is very strong proof of the fairness and justice of the assessment, and could only be overcome by evidence tending to show that those men were prejudiced or had been guilty of some misconduct, or clear and satisfactory evidence that they had committed an error of judgment. Certainly no such testimony can be found in this record.

Two instructions were given on behalf of petitioner as to the form of the verdict. These, in effect, told the jury, if they found the issue for *petitioners,* the form of their verdict would

be, "We, the jury, find the premises of objectors are not as-sessed more or less than their proportionate share of the cost of the improvement, and that they are not assessed more or less than they will be benefited by the proposed improvement." These are the only instructions given at the instance of the village upon which any criticism is made. It is said they took from the jury the right which they had, under the statute, to reduce the assessment against objectors' property. This is certainly a very strained view of the instructions. The peti-tioner was endeavoring to sustain the assessment as made by the commissioners. If the jury found in its favor, it would simply confirm that assessment, and the form of the verdict given amounted to that, and nothing more. These instruc-tions do not indicate what the form of the verdict should be if they found *against* the petitioner. The jury was, however, fully instructed, at the instance of objectors, that they might find that their property had been assessed more than its pro-portionate part of the cost of the improvement, or more than it would be benefited thereby, and specifically told what form that finding should be put in. The instructions on both sides were very voluminous. Those given on behalf of appellants informed the jury, in almost every conceivable form of lan-guage, of all the legal rights of objectors under the evidence, and as to the duty of the jury in applying the testimony to the law of the case. Considering the instructions as a whole, it is not only impossible to believe that the jury were misled, but we can not perceive wherein they were left uninstructed as to their duty.

It is insisted with more than usual earnestness that by the misconduct of counsel for the petitioner the jury were unduly influenced, and prejudiced against the objectors, and that the verdict was the result of that prejudice. That this complaint is not groundless is shown by the final action of the trial judge on that feature of the case, for while he persistently overruled all objections to prejudicial remarks and conduct of the coun-

sel for petitioner, yet he gave the following instructions, and stated to the jury that they were given of his own motion:

"7½. The court instructs the jury to disregard entirely all remarks and statements of the counsel of petitioner to which the opposing counsel noted objection or exception during the progress of the trial and up to this time.

"8. The court instructs the jury to disregard entirely everything that was said or done by the counsel, including the examination of a witness during the examination of the jurors, and up to the time that the jury were sworn in to try the case, to which counsel for objectors objected or excepted."

It would be unprofitable, and certainly an unpleasant task, to go over the occurrences of the trial which called for the giving of these instructions, more particularly the last one. The occasion for giving either of them should have been avoided by sustaining the objections of the opposing counsel therein referred to. The trial court could only have properly maintained its own dignity by sustaining those objections, and refusing to do so certainly tended to prejudice the objectors' rights. In a doubtful case we should not hesitate to reverse the judgment below for this error, notwithstanding the foregoing instructions. The objection here urged has led us into a more critical examination of some of the points made by counsel for appellants than we would otherwise have felt called upon to make. The result of that examination has convinced us that, on the whole record, the judgment below is right, and should be affirmed, and it will be so ordered.

*Judgment affirmed.*