## Chicago & Alton Railroad Company v. Martha Pelligreen.

1. VERDICTS—*Must be Supported by the Evidence.*—Where there is not sufficient evidence in the record to support a verdict, the judgment based upon it will be reversed and the cause remanded.

2. TRIALS—*Improper Conduct of Counsel.*—In an action against a railroad company for personal injuries, general corporate power and its abuses are not on trial and should not be projected into the case by counsel in a scathing and denunciatory manner, calculated to arouse the passions, create prejudice and warp the judgment of men.

C. & A. R. R. Co. v. Pelligreen.

Trespass on the Case, for personal injuries. Appeal from the City Court of East St. Louis; the Hon. B. H. CANBY, Judge, presiding. Heard in this court at the February term, 1895. Reversed and remanded. Opinion filed July 1, 1895.

WISE & McNULTY, attorneys for appellant.

W. P. LAUNTZ, attorney for appellee.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

The appellee recovered a judgment for a personal injury. The declaration contains two counts, the first averring that, as she attempted to get on a train at Venice, on January 2, 1894, with due care, it was suddenly started, thereby throwing the plaintiff against the end of the car and railing thereto attached, by means whereof the shoulder of the plaintiff was dislocated, and the second averring that she was roughly and violently shoved and lifted to and upon the steps of the car by a brakeman, in so careless and negligent a manner as to cause plaintiff to fall against the end of the car and the railing, dislocating her shoulder. The plaintiff was on her way to St. Louis, a short distance from Venice, to consult a physician. She did not fall, but entered the car and took a seat by her daughter and proceeded on her journey. She said nothing about her injury to the conductor, who took her ticket, or about the treatment claimed to have been received at the hands of the brakeman. She reached Dr. Fairbrother's office in a short time, and says she spoke to him about a pain, but he made no reply. Evidently she did not press the matter. The doctor says he does not recollect any talk about it. He treated her for some inflammatory trouble, for which she left home to see him, but not for any injury. When she returned home that evening she complained of pain, and then the daughter who accompanied her says she observed her injury. On January 6th, Dr. Fairbrother was called to Venice to see her. She then complained of being injured in her arm, which the doctor examined and bandaged, but discovered no dislocation. He considered the inflammatory trouble was aggravated by the

injury. Dr. Grayson also treated her on the 9th of January and for several days after, observed some swelling in shoulder, but did not evidently regard it as dislocated. In February she went to the hospital at St. Louis, where she remained two weeks, and was there treated by Dr. Fairbrother for her inflammatory trouble, but at no time did he discern any dislocation, which he thinks he would have done had it existed. Dr. Grayson also treated her occasionally, from the 24th of January to the 18th of February, and he evidently had not discovered the fact, though he says there was deformity there. On the 24th of February she went home, and on the 25th of February went to Dr. Grayson's office where he reduced the dislocation, which was then plainly to be seen. Both physicians are also experienced surgeons. Both say a dislocation would cause great pain, either at once or very soon after such an injury, and naturally cause one to cry out or faint.

The evidence does not disclose the kind of dislocation the appellant suffered. It is said there are three kinds. The most common are the upper and lower. The effect of the former is to set the elbow down against the side, and the round end of the arm bone sets upon the shoulder like an orange; the effect of the latter is to set the arm a little akimbo with the body and it is more or less fixed solid, in which case the point of the shoulder disappears, leaving a depression. The backward dislocation throws the round ball of the arm bone back upon the shoulder blade, the effect of which is to throw the elbow around upon the chest, almost immovable. It is said each one appears well marked, the most prominent feature being the uselessness of the arm, on account of being fixed or rigid. There is no attempt to controvert this evidence as to the effect of a dislocated shoulder. Neither surgeon who examined the arm discovered such effect, neither does the plaintiff or any of her family describe such a condition, and yet there is corroborative evidence, that on the evening of the 2d day of January, there was some sort of an injury afflicting the plaintiff. The daughter who accompanied her then for the first time observed it. She

did not observe how her mother got on the train, having preceded her in the car.    The conductor and brakeman deny that the train suddenly started before the plaintiff boarded it, and the brakeman denies any rough treatment.    He claims there was no such accident as she describes.    The case is peculiar in some of its aspects, and the record has been given a careful examination to discover all there is in it. Our conclusion is, the case should be reversed and remanded. Counsel for appellee in his argument to the jury, as shown by this record, incited possibly by the insinuations against his client's character, went beyond the limits of legitimate discussion to such an extent as to call for criticism.    General corporate power and its abuses were not on trial and should not have been projected into the case, as they were, by appellee's counsel, in the most scathing and denunciatory manner, calculated to arouse the passions, create prejudice and warp the judgment of men.    Raggio v. People, 135 Ill. 533; Maywood Co. v. Village of Maywood, 140 Ill. 216.

The judgment is reversed and the cause remanded.