Alfred B. McChesney *et al.*

*v.*

The Village of Hyde Park.

*Filed at Ottawa, June 19, 1894.—Rehearing denied, October Term, 1894.*

1. Drainage Law—*constitutionality of act of June 22, 1885.* The act ·of June 22, 1885, to vest the corporate authorities of cities and villages with power to construct, maintain and keep in repair, ditches, levees, dykes, and pumping works for drainage purposes, by special assessment upon the property benefited thereby, is not unconstitutional.

2. The clause in section 31, article 4, of the constitution, giving the legislature power to invest drainage districts with power to keep in repair ditches, etc., relates only to drains, ditches and levees constructed prior to the time such clause went into force. If the act of June 22, 1885, assumed to give the corporate authorities of cities and villages power to ·do anything in regard to drains, ditches and levees, other than constructing and maintaining, and to require the same to be paid by special as-.sessment upon property benefited thereby, such act to that extent would be unconstitutional and void.

3. The word "maintain" and the expression "keep in repair," as found in the amended section 31, article 4 of the constitution, are used as synonymous.

4. Same—*act of 1885 construed.* The act of June 22, 1885, relating to drainage, applies only to incorporated cities and villages. All the powers conferred by the act are conferred upon the corporate authorities ·of cities and villages, and hence proceedings under it are not required to be carried on in the name of commissioners of the district.

5. Same—*drainage of a city—discretion of city authorities as to the method.* In providing for a system of drainage in a city or village, the question whether the lands in the territory to be drained are so situated that they can be drained by the ordinary process of gravitation, or whether it is necessary to adopt a system involving the construction of a central reservoir or well into which the sewage and water shall be ·carried by means of drains and sewers, and thence be raised by means of pumping works to a higher level, so as to be discharged into a main trunk or sewer and pass off, is one for the determination of the city or village authorities. The choice of the mode of drainage is within the legislative discretion of the authorities of the city or village, and the courts will not interfere with such discretion, unless it has been clearly .abused.

6. In a proceeding to confirm a special assessment for the construction of a system of drainage, proof that some other mode would be less expensive, and answer the purpose intended, just as well as the one adopted, is properly excluded. The only question is whether the lands of the objectors are assessed more or less than they will be benefited, or more or less than their proportionate share of the cost thereof.

7. SPECIAL ASSESSMENT—*order appointing commissioners—whether it includes the entire improvement.* Where the order of the court appointing commissioners to make a special assessment for a local improvement refers to the petition filed by a city or village, which sets out the ordinance in full, and the oath of the commissioners, and the assessment roll refers to the ordinance which provides for a general system for drainage, an objection that such order is not broad enough to include the whole of the improvement, is properly overruled.

8. SAME—*in a village, after its annexation to a city.* After the annexation of a village to a city, a proceeding by such village to improve streets by special assessment brought before the annexation, should be carried on and prosecuted in the name of such village, and when this is done, a recital that the city attorney appear in the case will do no harm.

9. SAME—*for expense of operating a drainage system.* A city or village can not pass a valid or lawful ordinance for a special assessment for the operation of or for defraying the running expenses of a drainage system and pumping works connected therewith.

APPEAL from the County Court of Cook County; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Mr. EDWARD ROBY, for the appellants.

Mr. JOHN S. MILLER, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

On March 27, 1888, a petition was filed by the Village of Hyde Park in the County Court of Cook county, in a special assessment proceeding. The assessment was based upon an ordinance of the Village of Hyde Park, passed on November 7, 1887, for the cost of constructing a certain sewer, and erecting pumping works for drainage purposes. After the coming in of the assessment roll, A. B. McChesney *et al.* filed objections to the confirmation of the assessments as to their respective lands. Upon a hearing, A. B.

McChesney *et al.* failed to sustain their objections, and a judgment of confirmation was entered. Thereupon said A. B. McChesney *et al.* appealed to this court, and filed here a transcript of the record.

On July 13, 1889, another petition was filed by said village in said County Court, in another assessment proceeding. The assessment in said latter proceeding was based on another and different ordinance, an ordinance passed by the village on May 24, 1889, for an assessment to be made for the maintenance and operation of the aforesaid pumping works and drainage system. Upon the filing of the assessment roll in this latter proceeding, said A. B. McChesney *et al.* filed objections to the confirmation of the assessment as to their respective lands. They also failed to sustain their objections in this latter proceeding, and the court rendered a judgment of confirmation. A. B. McChesney *et al.* then took an appeal from this latter judgment, and a transcript of the record in this latter proceeding was thereupon filed in this court.

A third transcript of record was also filed in this court, containing a bill of exceptions, from which it appears that, by agreement and stipulation of parties, the two cases mentioned above were tried together, and further appears that by agreement of parties the exceptions taken in both cases might be shown in both cases in one bill of exceptions, as the cases were tried together by consent.

The two cases were submitted to this court as one case; and an opinion filed which affirmed both judgments. Thereafter, upon petition of appellants, a rehearing was ordered.

In respect to the first case, which was predicated upon the ordinance of November 7, 1887, we re-adopt and adhere to what was said in the opinion filed prior to the rehearing. That opinion, omitting only the matters having reference to the second case, which was based on the ordinance of May 24, 1889, was as follows:

"In the first case, the Village of Hyde Park, on March 27, 1888, filed its petition in said County Court, setting up that, on November 7, 1887, the president and board of trustees of the village passed an ordinance for the assessment of the cost of constructing a sewer in Sixty-third street, and the erection of pumping works for drainage purposes, together with an outlet pipe (a certified copy of the ordinance, and of the approval thereof by said president, being annexed to and made a part of the petition); that the commissioners appointed to make an estimate of the cost of 'the improvement contemplated by the ordinance,' made a report on December 5, 1887, estimating such cost at $85,000 (a true copy of the report and of the order of said president and board approving the same, being annexed to and made a part of the petition); that, theretofore, on December 1, 1887, the village filed in said court its petition for the ascertaiment of the just compensation to be made for private property, to be taken or damaged for the purpose specified in the ordinance, to-wit: lots 1, 2, 3 and 4, in block 4, in O. A. Bogue's subdivision, etc.; that on the same day said court rendered judgment, fixing $3,300 as the amount of such compensation and damages; and the prayer of said petition was that an assessment be made to raise said sum of $85,000 (which included the $3,300. and all the other costs of said improvement), together with the costs of the proceeding, and that commissioners be appointed to make the said assessment, etc.

The ordinance referred to in the petition is entitled, an 'Ordinance providing for the construction of a sewer on Sixty-third street, and the erection of pumping works for drainage purposes, together with an outlet pipe.' Its first section provides for the construction of a brick sewer along the center of the alley, lying west of and adjoining the west line of the Illinois Central Railroad Company's right-of-way, in said block 4, from a point 195 feet north of the center line of Sixty-third street to a point ten feet north of

the center of Sixty-third street; for the construction of a shaft or man-hole at each end of said sewer; for the construction of a brick sewer, connected with said shaft, ten feet north of the center of Sixty-third street, and running thence eastward along the center line of Sixty-third street, to a point ten feet west of the center of Stony Island avenue; for the construction of a continuous brick and tile pipe sewer, extending westward from said shafts to a point ten feet east of the center of Cottage Grove avenue; for the construction of forty-six man-holes in said sewer along Sixty-third street at the points indicated on a certain plat, and of house connection slants on each side of said sewer opposite every lot fronting on Sixty-third street on both sides thereof, etc.; for the construction of a well on said lots 1, 2, 3 and 4, a cast-iron pipe to be laid from said well to connect with the chimney on said lots, so as to ventilate said well, and said well to be connected with the sewer in said alley by a connecting sewer, etc.

"The second section of the ordinance provides for the erection of pumping works on said lots, consisting of a brick building, with coal shed, engine room, boiler room, three pumping engines, and other appliances for the operation of the engines, and a brick chimney fifty feet in height, etc., two steam boilers, etc. The third section provides for constructing and laying a cast-iron outlet pipe connecting with said pumps across said lots to said alley, thence along the center line of said alley and across said right-of-way, along a certain route to Lake Michigan. The fourth section ordains that the territory between the center lines of Sixtieth and Sixty-seventh streets, on the north and south, and between the center lines of Stony Island avenue and Cottage Grove avenue on the east and west, be declared a drainage district for the purpose of the aforesaid improvement. The fifth section provides that the cost and expense of said improvement shall be defrayed by a special assessment, to be made in accordance with sections 18 to 51.

inclusive, in article 9, of the City and Village act. Section 6 appoints three commissioners 'to make an estimate of the cost of the improvement contemplated by this ordinance, including labor, materials, and all other expenses attending the same, and the cost of making and levying the assessment,' etc. Section 7 provides, that said lots be condemned and appropriated for the erection thereon of pumping works for drainage purposes for the above bounded territory in said village. Section 8 provides, that the expense and cost of taking said property for said purposes be defrayed wholly by special assessment to be made in accordance with said article 9. Section 9 directs the filing of the petition above set forth in the County Court.

. "The County Court appointed commissioners to make the assessment. The commissioners were sworn, and made their assessment roll, and returned it into court. The appellants, as owners of two lots of ten acres each, filed objections to the confirmation of the assessment. The objections were overruled, except those averring that the property of objectors was assessed more than it would be benefited by the improvement. The latter objections were submitted to a jury, who found that said property would not be assessed more or less than it was benefited by the improvement, nor more or less than its proportionate share of the cost thereof. A motion for a new trial was overruled, and judgment rendered confirming the assessment.

\* \* \* \* \* \* \* \* \* \* \*

"The objection most strenuously urged upon our attention by counsel for appellants is, that the act of June 22, 1885, 'to vest the corporate authorities of cities and villages with power to construct, maintain and keep in repair drains, ditches, levees, dykes, and pumping works for drainage purposes, by special assessment upon the property benefited thereby,' is unconstitutional. The improvements above named, and the special assessments for the purpose of defraying the costs and expenses of such improvements, are

made under said act of 1885. The constitutionality of that act was fully considered in *Village of Hyde Park* v. *Spencer*, 118 Ill. 446. We there held the act to be valid, and see no reason now for retreating from the conclusion there reached. The ordinance of November 7, 1887, now under consideration, contains provisions similar to those which were sustained in the ordinance in the *Spencer* case, and is free from those defects which were condemned in the ordinance in the *Spencer* case. The foregoing ordinance of November 7, 1887, as to some of its features, was under review by this court in *Pearce* v. *Village of Hyde Park*, 126 Ill. 287, where it was held, that the objections urged in that case against the validity of said ordinance were not tenable. An ordinance of a similar character was also sustained by this court in *Drexel* v. *Town of Lake*, 127 Ill. 54.

"We are of the opinion that the County Court committed no error in overruling such objections to the confirmation of the two special assessments involved in the case under the ordinance of November 7, 1887, now under consideration, as are based upon the alleged unconstitutionality of the act of 1885. Every objection now made to the constitutionality of that act, and to the validity of the ordinance of November 7, 1887, passed under it, has already been settled by the decisions of this court, as above referred to.

"It was urged as an objection, in the court below, by the present appellants, that the order appointing the commissioners to make the assessment above named excluded a part of the contemplated improvement from the consideration of the commissioners. In other words, because the order directed the commissioners 'to make an assessment of the cost of constructing a sewer in Sixty-third street, and the erection of pumping works for drainage purposes, together with an outlet pipe, in accordance with the ordinance passed  *  *  on the 7th of November, 1887, a copy of which ordinance is presented and made a part of the

petition,' it is, therefore, claimed that the commissioners were not directed to assess the cost of constructing the sewer 195 feet long, from Sixty-third street to the well mentioned in section 1 of the ordinance, or the cost of the lands to be condemned under section 7 of the ordinance. It is also claimed, that the language of the oath taken by the commissioners, and of the assessment roll returned by them, is too narrow to embrace the portion of the improvement which is alleged to have been thus excluded from the order. We think that the objections thus taken to the order, the oath and the assessment roll, were properly overruled by the County Court.

"The order refers to the petition, and the petition sets forth the ordinance in full, both that which refers to the sewer in the alley and that which refers to the sewer in the street. The oath and the assessment roll refer to the ordinance, including all its sections and details, and the commissioners, in making an assessment of 'the cost of said improvement,' could not have supposed that 'the said improvement' was any other than the whole improvement, and all its parts, as described in the ordinance. The oath and assessment roll specifically refer to the compensation to be paid for the lots to be taken, and the petition states that the amount of such compensation is embraced in the total cost of the improvement. It is manifest from a study of the ordinance of November 7, 1887, that the sewer in Sixty-third street and the sewer in the alley and the pumping works, together with the lots on which they were to be erected, and the outlet-pipe, together with its route to the lake, all constituted one improvement. The language of the order, oath and assessment roll correspond with the language of the title of the ordinance; and yet such title does not specifically mention the sewer in the alley, or the condemnation of the lots, although the latter are fully described in the body of the ordinance. The sewer in the alley was a mere connecting duct

41—151 Ill.

to unite the sewer in the street with the pumping works and the outlet-pipe. The sewer in Sixty-third street was to be drained of its sewage by means of the pumping works, and by means of a connection with the shafts or manholes at the ends of the sewer in the alley. The pumping works and alley sewer were adjuncts to the sewer in Sixty-third street, and necessary aids to its operation. An assessment for the construction of the street sewer and pumping works and outlet-pipe necessarily involved and included the cost of constructing the alley sewer and of condemning the lots for the erection of the works. A system of sewer drainage, similar to that contemplated by the present ordinance, is more particularly described in *Drexel* v. *Town of Lake, supra.*

"Upon the trial below the appellants offered to prove that their lots were somewhat higher than the adjoining lands in the territory or district covered by the improvement, and, therefore, could have been drained by the ordinary 'gravity system,' that is to say, a system in which gravitation alone is depended upon for the discharge of the sewage. The court refused to admit the offered proof, and such refusal is assigned as error. We think that no error was committed by this ruling. It was a question to be determined by the village authorities, whether the lands in the territory to be drained were so situated that they could be drained by the ordinary process of gravitation, or whether it was necessary to adopt a system, involving the construction of a central reservoir or well into which the sewage and water should be carried by means of drains and sewers, and there raised by means of pumping works to a higher level, so as to be discharged into a main trunk or sewer and pass off into the lake. The choice of the mode of drainage is within the legislative discretion of the trustees of the village or town, and the courts will not interfere with such discretion, unless it has been clearly abused. There is no evidence of such abuse here. The only question in this

case was, whether the lands of the appellants were assessed more or less than they were benefited by the improvement, or more or less than their proportionate share of the cost thereof. The purpose of the sewer was not merely to carry off surface waters, but to carry off the sewage as well. The system to be adopted should be that which is best adapted to the drainage of all the lands located within the territory or district to be drained.

"It is objected that in some of the orders entered by the court in the assessment proceedings under the ordinance of November 7, 1887, the city of Chicago is recited to have appeared by its attorney. The village of Hyde Park was annexed to the city of Chicago on July 15, 1889. Section 7 of the Annexation act (Laws of 1889, page 71) provides, that all suits pending in any court on behalf of any village annexed to a city may be prosecuted in the name of the village so annexed, and all judgments obtained for such village may be collected and enforced in its name. Notwithstanding the recitals thus referred to, an examination of the proceedings in this record shows, that after the annexation such proceedings were prosecuted and carried on in the name of the village of Hyde Park, in accordance with said section 7."

In the second case, in which the village of Hyde Park filed its petition in the County Court on July 13, 1889, the proceedings were based upon an ordinance passed on May 24, 1889. That ordinance provides, that an assessment be made for the maintenance and operation of the drainage system and pumping works of the district, etc.; that the expense and cost of said maintaining and operation shall be defrayed wholly by a special assessment to be made in accordance with sections 18 to 51 inclusive of article 9 of the act to provide for the incorporation of cities and villages; and that certain persons designated therein be and are "appointed commissioners to make an estimate of the cost of the said maintenance and operation contemplated by this

ordinance, including labor, materials and all other expenses attending the same," etc. The said commissioners returned an itemized estimate of such cost, amounting in the aggregate to $8,200, the two principal items of which were salaries, $3,600, and coal $3,000. The commissioners subsequently appointed to make the assessment according to benefits, assessed eleven cents to the village and $8,199.89 of the cost of the maintenance and operation provided for in the ordinance against the property in the district.

Under this state of facts the question is raised whether a city or village can pass a lawful or valid ordinance for a special assessment for the operation of or for defraying the running expenses of a drainage system, and pumping works connected therewith, after they have been constructed?

It is admitted, and manifest even if not admitted, that the only authority or power which the village of Hyde Park could claim for passing the ordinance of May 24, 1889, is through the act of the general assembly, approved June 22, 1885, and found in the Laws of 1885, on page 60. And, to go back one step further, and to the source of power, the only authority the general assembly had to enact said act of 1885 is found in amended section 31, of article 4, of the constitution of the State, adopted by the people at an election held November 5, 1878. (S. & C. Ann. Stat., p. 122; sec. 31, art. 4, of the constitution of 1870.) In *Village of Hyde Park* v. *Spencer et al.*, 118 Ill. 447, it was held that if the legislature had the authority to pass the act of June 22, 1885, such authority must be referred to the amendment to section 31, of article 4, of the constitution, adopted by a vote of the people in 1878. See, also, *Moore, Ex'x* v. *The People ex rel.*, 106 Ill. 376.

Said amended section 31 reads as follows: "The general assembly may pass laws permitting the owner of lands to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts, and vest

the corporate authorities thereof with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby." It will be noted that the words, "to keep in repair," have reference only to drains, ditches and levees constructed prior to the time that said amended section 31 went into force. And it will be further noted that the only powers that the legislature was authorized to vest in the corporate authorities of drainage districts that might thereafter be organized under such acts as might be passed by the legislature, were the powers to construct and maintain levees, drains and ditches, except that as to drainage districts, organized under the laws of the State in respect to drains, ditches and levees theretofore constructed under the laws of this State, the power was given the legislature to vest in such districts the power "to keep in repair," and that power only. And so, even if the act of June, 1885, assumed to give to the corporate authorities of cities and villages power to do anything in regard to drains, ditches or levees, other than constructing and maintaining, and require the same to be paid for by special assessment upon the property benefited thereby, such act was to that extent unconstitutional and void. But, in our opinion, the word "maintain," and the expression, "keep in repair," as found in said amended section 31, were used as synonymous, and as meaning the same thing, and there was merely a change in the diction used.

However, we do not think that the legislature intended by the act of June 22, 1885, to give to the corporate authorities of cities and villages any powers other than those it was authorized to vest in such corporate authorities. It is not to be presumed that the legislature intended to violate the constitution of the State; and the language of the act justifies no conclusion that it did violate the fundamental

law of the State. The first section of the act vests in the corporate authorities of cities and villages power to construct drains, etc., by special assessment. The second section vests such corporate authorities with power to maintain and keep in repair such drains, etc., and ends with a proviso, "that no lot, etc., shall be assessed more than once in any one year for such maintenance and repair." The legislature found the words, "maintain" and "keep in repair," both used in the constitutional amendment, and used as synonymous expressions. To repeat them both in the act of 1885 was; in the way they were used, mere tautology. Surplusage does not vitiate. It may be suggested that in the *Spencer* case, *supra,* the court upheld an assessment of $4,000 for the cost of one year's "maintenance" of pumping works. What if it did? The court undoubtedly understood the words "maintain" and "maintenance" in the same sense that we now interpret them. This seems to be indicated by the fact that the court, in considering this item in their opinion, say; "The act of 1885 vests the corporate authorities of cities and villages, with power to construct and maintain such drains and pumping works as are necessary for the purpose of draining," etc. Besides this, it appears from the opinion that the ordinance provided "that a sufficient sum be levied and collected for maintaining the pumping works contemplated by this ordinance, and for keeping the same in repair for the term of one year from the completion of the same." And, so far as we are advised, it is not unreasonable to suppose that some years as much as $4,000 may be required to keep works of such magnitude, and in such constant use, in repair.

It is to be noted that the provisions of the act of June 22, 1885, apply only to incorporated cities and villages. The first and primary definition given to the word "maintain," both in Webster's Unabridged Dictionary, and in Webster's International Dictionary, is, "to hold, or keep

in any particular state or condition." And we think that this is the proper meaning to give to the word under the act. If the act had any application to land outside of the corporate limits of incorporated cities and villages, then (if the constitutional objection was out of the way) there would be more occasion and reason for holding that the legislature, in giving by the act "the power to maintain and keep in repair," did not, by designating both the power to "maintain" and the power to "keep in repair," mean to confer only what is substantially one and the same power, and this because of the familiar rule that statutes should be so construed, if possible, as to give each word a meaning. For in the case of ordinary drainage districts formed for agricultural purposes, if pumping works and machinery were used, and labor in operating them required, it would be difficult to see how, in the absence of the power to make special assessments upon the property benefited, the running expenses of the system adopted, and the cost of operating the machinery and pumping works, could be paid. But no such difficulty arises under the act of June 22, 1885. As we have seen, the cost of construction and of maintaining or keeping in repair are the only costs that can be levied upon the property benefited by special assessment. The word "operate" does not mean the same thing as either the word "construct," the word "maintain," or the expression "keep in repair," and is not included in the significations of either. Webster defines the word "operate" as meaning "to put into, or to continue in operation or activity," "to work, or to operate a machine." The correct solution is, that the cost of operating, when completed, or paying the running expenses when the ditch, pumping works and machinery are in activity, devolved upon the village of Hyde Park as a part of its general and corporate current expenses as an incorporated village; the drainage district, as a district, being in the meanwhile

liable to pay all expenses that come within the category of maintenance or keeping in repair, as herein defined.

The operating expenses being a legitimate current expense of the municipality of the village, and an indebtedness incurred for corporate purposes, must be paid by it, or since its annexation to the city of Chicago, by said city. Section 9, of article 9, of the constitution provides as follows : ''For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes; but such taxes shall be uniform in respect to persons and property, within the jurisdiction of the body imposing the same.'' We are unable to see that there would be any injustice in requiring the municipality to bear the burden of the current expenses of operating the sewerage.

Our conclusion is that the ordinance of May 24, 1889, is invalid, both because it is not authorized by amended section 31 of article 4 of the constitution, and because, even if it was not unconstitutional, no power to pass it was given by the act of the general assembly, approved June 22, 1885; and that consequently all proceedings under it were unauthorized and void.

Some minor points are made, some of them for the first time in the petition for a rehearing.

Special stress is laid in that petition upon the case of *Ligare* v. *City of Chicago*, 139 Ill. 46.

In our opinion, the question there decided has no application to the case at bar. The ruling in the *Ligare* case was, in substance, that the city could not condemn real estate for a right of way of a railroad company, and *vice versa*, that a railroad company could not condemn real estate to be used by the city as a street; in other words, that each corporation could only exercise its own proper corporate powers. In the case at issue, the corporate authorities of cities and villages were empowered to form drainage districts within their corporate limits, and, in substance, made drainage commissioners of such dristrict, and given author-

ity to exercise all the powers of ordinary drainage districts, and all the powers conferred by the act of June 22, 1885. The subject was fully discussed and decided in *Hyde Park* v. *Spencer, supra.*

It is objected that the proceedings in both the cases under consideration were not in the name of "drainage commissioners," etc. It is a sufficient answer to say, that all the powers conferred by the act of June 22, 1885, were conferred upon the corporate authorities of cities and villages, and that there was no requirement in the act that the proceedings should be in the name of "drainage commissioners," etc. In *Village of Hyde Park* v. *Spencer, supra, Pearce* v. *Village of Hyde Park,* 126 Ill. 287, and other proceedings such as these, the proceedings were instituted in the same manner as in the two cases now here. We think the objection should not be sustained.

It follows from what we have said that the judgment of the County Court, confirming the assessment made upon appellant's property in the first proceeding, which was based on the ordinance of November 7, 1887, is affirmed; and that the judgment of said court confirming the assessment made upon appellant's property in the second proceeding, which was based upon the ordinance of May 24, 1889, is reversed; and it is ordered that each party pay one-half of the costs in this court, and one-half of the costs in the County Court of Cook county.

*Affirmed in part and in part reversed.*

Wilkin, C. J., dissenting. I do not think pumping works in connection with a drainage system under the act of June, 1885, can be operated by general taxation.