## Oscar W. Schneider, Appellee, v. Otto Neubert et al., Appellants.

### Gen. No. 7,102.

1. CONTRACTS—*construction of provision requiring party to "maintain" insurance.* The owners, and not the contractor, are liable for the payment of insurance premiums under a building contract requiring the contractor to "maintain" insurance protecting the owners from personal injuries claims but which contained no provision for payments of any kind to be made by the contractor and another provision requiring him to maintain a capable foreman on the job was construed by the parties to require payment of his wages by the owners and the contractor's compensation was a percentage of the net cost of materials and labor and there is competent evidence that the owners had not denied liability for the insurance premiums prior to suit.

2. BUILDING AND CONSTRUCTION CONTRACTS—*allowable items of cost under "cost plus" contract.* A building contractor who was to be paid the total net cost of labor and materials plus a percentage thereof is entitled to be compensated for gasoline purchased to operate an engine used during the course of construction, where the evidence shows the amount to be fair and reasonable and that it was purchased to keep the engine in operation and save time, even though it was agreed that the owners should furnish it from their garage, which was located at a distance and not convenient of access.

3. BUILDING AND CONSTRUCTION CONTRACTS—*insurance premiums as compensable cost under "cost plus" contract.* A contractor who is to be compensated by receiving a percentage of the net cost of the building is entitled to a commission on the cost of compensation

and public liability insurance which he is required to carry under the terms of the contract.

4. BUILDING AND CONSTRUCTION CONTRACTS—*right of contractor under "cost plus" contract to interest.* A building contractor who has constructed a building under a contract entitling him to compensation at a percentage rate on the net cost of the labor and materials is entitled to recover interest at five per cent, especially where the owners recognize their liability therefore in their requested instructions.

5. APPEAL AND ERROR—*conclusiveness of verdict on conflicting evidence.* A verdict allowing a building contractor certain items of cost and crediting the owners with certain claims of set-off against the amount due under the contract will not be disturbed on appeal where the evidence, though conflicting, shows the items to have been the actual fair and reasonable costs and that the owners were allowed all disputed items to which they were entitled.

6. EVIDENCE—*admissibility of statement of amount paid in action by person paying against parties primarily liable.* A written statement of the amount of compensation and public liability insurance premiums paid by a building contractor is admissible in evidence in an action in assumpsit by such contractor against the owners for whom the building was constructed to recover the amount so paid, defendants being liable under the contract, where there is evidence that after a complaint by one of the owners that the amount was excessive, the bill was reaudited by the insurance agent and the statement sent to the contractor who mailed it to the owners who made no further complaint but admitted the justice of the claim and agreed to pay it.

7. EVIDENCE—*admissibility of copy of statement in action to recover amount paid thereunder.* In an action in assumpsit by a building contractor to recover the amount of insurance premiums paid by him, against the owners who were primarily liable therefor under the contract, copies of the schedule of rates which were in force at the time the policy was issued and continued in force during the life of the policy are admissible on the testimony of the person who made them identifying them and explaining their purport.

8. CONTRACTS—*construction placed on contract by parties thereto as binding jury.* In an action in assumpsit on an ambiguous contract, it is proper to instruct the jury that, if they find from the evidence that the parties to the contract construed it in a particular way, that construction is binding on the jury, and such instruction does not leave the construction of the contract to the jury.

9. HARMLESS AND PREJUDICIAL ERROR—*when instruction is not prejudicial that construction placed on contract by parties is binding on jury.* An instruction that if the jury find from the evidence

that the parties to a contract gave it a particular construction that construction is binding on the jury in an action on the contract, is not prejudicial where both court and jury found that the parties did so construe it and the construction was in accordance with the law and the facts.

10. INSTRUCTIONS—*when not objectionable as contrary to evidence.* An instruction that if the jury finds from the evidence that defendants admitted the correctness of the statement sued on and made payments thereon without objection they could not deny liability therefor, is not objectionable as contrary to the evidence, although defendants denied admitting the correctness of the statement, where plaintiff testified to their admissions to him that it was correct, the question of credibility being for the jury.

11. INSTRUCTIONS—*conformity to evidence.* An instruction that interest is to be computed at five per cent unless the jury find that there was an agreement for a higher rate is not objectionable where predicated upon the evidence, and especially where it states substantially the same rule as that contained in an instruction offered by the objecting party.

Appeal from the Circuit Court of Henry county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the April term, 1922. Affirmed. Opinion filed August 5, 1922. Rehearing denied October 3, 1922.

THOMAS J. WELCH, for appellants.

STURTZ & EWAN, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, Oscar W. Schneider, began an action of assumpsit in the circuit court of Henry county against appellants, Otto Neubert, Edward W. Spiegel and Sam N. Wasley, copartners, to recover the balance due on a contract. There was a trial by jury, a verdict for appellee for $1,089.03, judgment was rendered on the verdict, and this appeal was prosecuted.

Appellee was a general contractor in the City of Kewanee, and the appellants were copartners operating a garage. The suit was based upon a written contract between the parties, dated March 12, 1920, and

providing that appellee was to construct a two-story garage building for the appellants. He was to furnish all labor and equipment needed, to haul the lumber and material to the building, and to maintain such insurance as would protect the owners from claims for damages for personal injuries. The appellants were to furnish the small tools, such as shovels and wheelbarrows, to take out fire insurance as needed, and pay to the appellee, for the performance of the contract, the total net cost of labor and materials plus ten per cent commission on the same. The work was started in April, 1920, and was completed in September, 1920. There was no dispute as to the quality of the materials or the workmanship. The chief items in dispute are, the premium paid by the appellee for insurance against personal injuries amounting to $923.22; for gasoline used $21.65; for wrecking sheds $128.69; for labor in cleaning the premises $64.06; a claimed overcharge for lumber and labor for building bricklayer's trestles amounting to $18; for lumber and material in building mortar boards amounting to $27.20; the charge for interest of $141.15; and the amount due the contractor as commission.

To the declaration appellants filed the general issue and a plea of tender of $243.30. It was stipulated that the tender might be accepted without prejudice, and that the appellants were entitled to a credit of $38 for a shed taken to the Gueste laundry job, and to a deduction on commission of $25 on tools purchased by the appellants.

The principal contention is with reference to the $923.22 paid by the appellee for insurance against personal injuries during the progress of the work. Each party claims that the other is liable for the payment of this insurance. The contract provided that the "contractor shall maintain such insurance as will protect the owners from claims for damages for personal injuries." It also provided that "the owners agree

to pay the contractor for the performance of the contract the total net cost of labor and materials plus ten per cent commission on same." It is apparent from a reading of this contract that it was not carefully drawn. The language used is not apt and does not clearly express the exact intention of the parties. There is ground for dispute as to the meaning of several of its provisions. The word "maintain" is used twice, once. in the paragraph above recited and another time where the contractor agrees "at all times to maintain a capable foreman on the job who shall work and superintend under the contractor, advise, and keep actual time sheets."

In Webster's International Dictionary and the Standard Dictionary, the first and primary definition of "maintain" is to hold or preserve in a particular state or condition; keep from falling, declining or ceasing; support. This definition has been approved in *McChesney v. Village of Hyde Park*, 151 Ill. 634, and *People v. Cannon*, 186 Ill. App. 448. Other definitions given by the dictionary are: (2) to supply with means of support; provide for; sustain; keep up; (3) to support by reason, assertion or argument; vindicate; affirm; (4) to hold possession of, not to lose or surrender. In *DeWolf v. Marshall Field & Co.*, 201 Ill. App. 542, with reference to physical things, the word was held to mean in the ordinary and obvious sense, to keep or to have. In *Alexander v. Parker*, 144 Ill. 355, in its second sense, as applied to dependents, it was held to mean to keep up, to bear the expense of, to supply with what was needed, to provide for, sustain.

It is contended by appellants that the meaning of the word, as used in this contract, is to bear the expense of. The mere reading of the paragraph in which the word is used does not sustain this construction. Several other definitions might, with equal force, be applied to the word, and it is only by a con-

sideration of the whole contract, the object sought to be accomplished by it, and the actions of the parties thereunder, that the true meaning can be ascertained.

Where the terms of a contract are clear and not ambiguous, the language used must govern, and will be interpreted according to its usual and ordinary meaning, even though the parties have failed to express their real intention. *Benjamin v. McConnell,* 9 Ill. 536; *Walker v. Tucker,* 70 Ill. 527; *Canterberry v. Miller,* 76 Ill. 355; *Coey v. Lehman,* 79 Ill. 173; *Schneider v. Turner,* 130 Ill. 28. The construction of a contract is a question of law for the court. *Hancock v. Knights of Security,* 303 Ill. 66. Even where the language used is ambiguous, and the true construction is doubtful, it is for the court to determine the meaning of the language used in the light of all of the evidence, and instruct the jury in regard thereto. *Ogden v. Kirby,* 79 Ill. 555. Where the proper construction is doubtful, courts will seek to discover and give effect to the intention of the parties; so that performance may be enforced according to the sense in which parties mutually understood the contract when it was made, and regard will be had to any particular construction which the parties, by their acts, have put upon it. *Consolidated Coal Co. of St. Louis v. Schneider,* 163 Ill. 393; *Whalen v. Stephens,* 193 Ill. 121; *Armstrong Paint & Varnish Works v. Continental Can Co.,* 301 Ill. 102. Where resort is had to extensive evidence as to the proper construction, the court may require the jury to find the facts established by such evidence, but it should itself determine the proper construction to be given to the contract in the light of the facts submitted to the jury. *Adams & Westlake Mfg. Co. v. Cook,* 16 Ill. App. 161; 9 Cyc. 784.

The parties to this contract have not placed any interpretation on the meaning of the word "maintain" as used in the contract with reference to the insur-

ance, but they have placed their interpretation on the meaning of the word as used in the clause which required the contractor to maintain a capable foreman on the job, and the construction placed upon that paragraph by the parties was that the word "maintain," as therein used, meant that the appellants were to pay the wages of the foreman, and they did pay his wages, and no question is raised on this point in this case. The only difference between maintaining a foreman and maintaining insurance under the terms used is that the services of the foreman might be classed as a part of the labor necessary to erect the building, while there might be some question about the insurance being so classified. Appellants seek to avoid the force of this interpretation, with reference to the foreman, by saying that they did not know until after the question of insurance arose that they were in fact paying the wages of the foreman. Even if this was true, it is difficult to see why the word "maintain" would have two different meanings as used in this contract.

Appellee testified that in October, after the work was completed, he sent a statement of the account to the appellants, and it contained the item for insurance, and later he had a talk with the appellant, Spiegel, in which Spiegel did not deny the liability for the insurance but stated that he thought the insurance bill was too high. Appellee also testified that later on, in November, he talked with appellant, Neubert, who said the bill for insurance was all right; that in January, 1921, he talked with appellant, Wasley, who said he was sorry they were unable to pay the bill, but that it was all right, and as soon as they could get the money they would pay. All of these conversations were denied by the appellants, but this evidence was competent to be considered by the jury. The parties were at liberty, when the contract was entered into, to make such provisions for the payment of this insurance as they saw fit. They could provide that either party was

to pay it and such provision would be binding. The appellee was to furnish certain equipment specifically stated. He was to use his skill and ability, employ labor and purchase material, but there was no provision for any payment by him, unless it was for the insurance. The language of the contract was uncertain and the evidence was in conflict. The parties placed, on similar language used, their interpretation contrary to the claim of the appellants. In the light of all the facts and circumstances in evidence the proper construction of the contract was that the appellants were to pay for the liability insurance.

As to the other items in dispute, the evidence showed that the gasoline was used in operating the engine during the course of construction, and that the amount charged was fair and reasonable. The only objection to this item is that Spiegel gave orders that appellants would furnish the gasoline from their garage which was some distance from the building being erected. Appellee testified that the gasoline charged for was purchased at times when it was not convenient to get it from appellants' garage, and it was purchased elsewhere to save time and to keep the engines in operation. The evidence shows that the charge for labor in cleaning up, and for wrecking the sheds, was the actual fair and reasonable cost for the services performed. As to the lumber and material used for building bricklayer's trestles and mortar boards, the evidence shows that the labor was a very small item, and that the lumber taken was afterwards used in the building. Credit was given for certain sheds taken by appellee, and for commission on tools purchased, and the jury deducted about $40 in addition for interest claimed. The liability for interest at five per cent was recognized by the appellants in their first instruction. If the insurance was a proper charge against appellants, then appellee was entitled to commission on that item. The total amount claimed orig-

inally was $1,435.65, but the judgment was for $1,089.03. On all of these minor claims of set-off, in dispute, the evidence was in conflict, and we are of the opinion that credit was allowed by the jury for all items in dispute which the evidence showed should have been allowed to the appellants.

Complaint is made of the admission of appellee's exhibits 3, 4 and 5. Exhibit 3 was a statement of the amount of compensation and public liability insurance paid by appellee, and was prepared by an agent of the insurance company and mailed to the appellee. The evidence on behalf of the appellee shows that he had a conversation with Spiegel with reference to the liability insurance and Spiegel said the bill was too large. Appellee testified that he told Spiegel he would have the bill reaudited by the insurance company; that he did have the bill reaudited and exhibit 3 was the reaudit which he testified he mailed to the appellants; that later he had a talk with Spiegel who again insisted that it was too high, but he later talked with each of the appellants and they admitted the justice of the claim and agreed to pay it. These conversations were denied by the appellants, but after the insurance was reaudited, if exhibit 3, which was the reaudit, was sent to the appellants, and there was evidence tending to show they made no complaint concerning it and agreed to pay it, such evidence would be proper to be considered by the jury, and would be sufficient to admit exhibit 3 in evidence. Exhibits 4 and 5 were schedules of operations to be attached to the policy. A. J. Anderson testified that he made the original of exhibit 4 and that exhibits 4 and 5 were the rates which went into effect on August 3, 1919, and were the rates which were in force at the time the insurance was issued, and were the rates which continued during the term of the policy. It is insisted that these two exhibits were improperly admitted, and that the testimony of Anderson concerning them was improper.

There is no merit in this contention. The two exhibits
and the testimony of Anderson concerning them were
properly admitted.

The second instruction given on behalf of the ap-
pellee told the jury that if they believed from the evi-
dence that the parties construed the contract as im-
posing the duty upon appellants to pay the premium
on the insurance, then the jury were bound by the con-
struction put upon the contract by the parties, and ap-
pellants must be held liable for such premium. The
only objection to this instruction is that, by it, the
court left the construction of the contract to the jury.
The instruction considered as a whole cannot be so
interpreted. It did not leave the construction to the
jury. It merely told them that if the evidence showed
that the parties had construed the contract in a cer-
tain way that the jury were bound by that construc-
tion. The instruction as given was correct.  9 Cyc.
785. Even if the instruction was erroneous, no injury
was done thereby, for the reason that the jury and
the court both found that the parties construed the
contract so as to make appellants liable, and that con-
struction was in accordance with the law and the facts.

Appellee's third instruction told the jury that if
they believed from a preponderance of the evidence
that the appellee furnished appellants an itemized
statement of the account, including the items in dis-
pute, and that appellants made no objection to such
statement but admitted its correctness, and after-
wards made payments thereon without objection, then
the appellants could not deny liability, except as to the
charge for interest which should be computed at five
per cent unless otherwise agreed. The objection to
this instruction is that the evidence does not show
that the appellants admitted that the statement was
correct. It is true the appellants testified they did not
admit the correctness of the statement, but it is equally
true that the appellee testified that they did admit its

correctness.    Consequently there was evidence on which to predicate the instruction, and the credibility of the witnesses was for the jury.    The last clause of the third instruction told the jury that the interest should be computed at five per cent unless the jury believed there had been an agreement for seven per cent.    Not only is there evidence upon which to predicate this part of the instruction but it is in harmony with the first instruction offered by appellants which announced substantially the same rule.

Appellants contend their instructions two to five, refused, should have been given.    The second instruction told the jury that the appellants were not liable for the public liability insurance.    The third told the jury the appellants were not liable for any premium paid for insurance.    The fourth told the jury the appellee was not entitled to ten per cent on any insurance premium paid, while the fifth told the jury the appellants were not liable for the $923.22.    None of these instructions was in harmony with the views expressed in this opinion and each was for that reason properly refused.

We find no reversible error and the judgment will be affirmed.

*Judgment affirmed.*