THE CITY OF NORTHLAKE *et al.*, Plaintiffs-Appellees, *v.* THE DEPART-
MENT OF TRANSPORTATION *et al.*, Defendants-Appellants.

First District (1st Division)   No. 82—3126

Opinion filed November 7, 1983.

Neil F. Hartigan, Attorney General, of Springfield, Arvey, Hodes, Costello & Burman, of Chicago, and Roland Eckert, of Department of Transportation, of Springfield (Gary L. Starkman and Leonard Saphire-Bernstein, Special Assistant Attorneys General, of counsel), for appellants.

Serpico, Novelle, Dvorak, & Navigato, Ltd., of Chicago (Robert A. Novelle and Vincent F. DiPiero, of counsel), for appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

Six municipalities, namely, city of Northlake, village of Melrose Park, village of Bellwood, village of North Riverside, village of Forest Park, and village of Stone Park (plaintiffs) brought this action against the Illinois Department of Transportation (Department) and its officers. Plaintiffs filed a two-count complaint. The first count sought a declaration that the Department was legally liable to provide electrical power for the operation of various traffic-control devices. The second count sought *mandamus* to compel this payment by the Department. The trial court entered an order on motion of the Department striking count II and requiring an answer to count I. The Department filed an answer and affirmative defense. It alleged that plaintiffs had agreed by written contracts to assume the cost of providing the necessary electricity.

For some esoteric reason plaintiffs filed a motion for summary judgment. After extensive hearings, the trial court held that the Department was obligated by statute to supply the necessary electricity. In addition, the trial court denied plaintiffs' motion for summary judgment. Although the order appealed from might possibly be construed as a partial summary judgment, it is definitely a declaration of the rights of the parties in accordance with the prayer of the first count of plaintiffs' complaint. We will consider the order as a final declaratory judgment. See *Lake Shore Racquet Club, Inc. v. Fireman's Fund Insurance Cos.* (1980), 91 Ill. App. 3d 1118, 1121, 415 N.E.2d 625.

I

Initially, the Department contends the trial court had no jurisdiction to adjudicate the present controversy but that the court of claims is the only proper forum. Section 8 of the Court of Claims Act pro-

vides in pertinent part:

"The court [of claims] shall have exclusive jurisdiction to hear and determine the following matters:

(a) All claims against the state founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency, other than claims arising under the Workers' Compensation Act or the Workers' Occupational Diseases Act, or claims for expenses in civil litigation.

(b) All claims against the state founded upon any contract entered into with the State of Illinois." Ill. Rev. Stat. 1981, ch. 37, par. 439.8.

In *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 126, 384 N.E.2d 310, the supreme court held, "the issues involved in the instant case (the effective date of a statute) and the relief requested (a declaratory judgment and the withholding of certain funds from the State treasury) do not render the instant case a suit against the State." We find *Allphin* dispositive of the issue before us. The basic theory of *Allphin* was fully and expressly reaffirmed in *Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 491-92, 426 N.E.2d 1204.

■ In the case at bar, plaintiffs do not claim money damages based upon their dealings with the Department. On the contrary, plaintiffs' complaint seeks simply a judgment declaring plaintiffs' future rights regarding the interpretation of the pertinent sections of the Vehicle Code of Illinois. The issue of *mandamus* to obtain payment of money, raised under the dismissed second count of plaintiffs' complaint, is not before the court. We therefore conclude that the instant case was correctly filed in the circuit court which is the proper legal forum for adjudication of the rights of these parties.

## II

Turning to the merits of this litigation, the pertinent portion of the Illinois Vehicle Code provides:

"The Department [of Transportation] shall place and maintain such traffic-control devices, conforming to its manual and specifications on all highways under its jurisdiction as it shall deem necessary to indicate and to carry out the provisions of this Chapter or to regulate, warn or guide traffic." Ill. Rev. Stat. 1981, ch. 95½, par. 11—303(a).

The issue before us is whether the statutory language requiring the Department to "place and maintain traffic-control devices" requires the Department to furnish electricity at its own expense for

the operation of the various devices. The learned and able trial judge held expressly that under the circumstances here shown, a reasonable definition of "maintenance" requires the Department "to provide the necessary electrical energy" for the traffic controls. The problem thus is one of statutory construction to determine the meaning of the language used by the legislature.

We are required to give statutory language its plain and ordinary meaning. (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46, 429 N.E.2d 492; *Griffin v. City of North Chicago* (1983), 112 Ill. App. 3d 901, 445 N.E.2d 827.) The principal definition of the word "maintain" is "to keep in a state of repair, efficiency, or validity: preserve from failure or decline ***." Webster's Third New International Dictionary 1362 (1971); see also *Board of Education v. Board of Education* (1931), 343 Ill. 464, 469, 175 N.E. 810.

In addition courts have previously made a distinction between the concepts of maintenance and operation. In *McChesney v. Village of Hyde Park* (1894), 151 Ill. 634, 37 N.E. 858, the supreme court interpreted a statute authorizing municipalities to levy taxes for a sewage draining system. The court concluded that the municipalities had the authority to levy taxes only for the construction and maintenance of the system and not for its operation:

> "As we have seen, the cost of construction and of maintaining or keeping in repair are the only costs that can be levied upon the property benefited by special assessment. The word 'operate' does not mean the same thing as either the word 'construct,' the word 'maintain,' or the expression 'keep in repair,' and is not included in the significations of either. Webster defines the word 'operate' as meaning 'to put into, or to continue in operation or activity,' 'to work, or to operate a machine.' The correct solution is, that the cost of operating, when completed, or paying the running expenses when the ditch, pumping works and machinery are in activity, devolved upon the village of Hyde Park as a part of its general and corporate current expenses as an incorporated village; the drainage district, as a district, being in the meanwhile liable to pay all expenses that come within the category of maintenance or keeping in repair, as herein defined." (151 Ill. 634, 647-48.)

(See also *Illinois Central R.R. Co. v. Illinois Commerce Com.* (1947), 397 Ill. 387, 392, 74 N.E.2d 526.) Furthermore, in *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 447-48, 404 N.E.2d 213, the supreme court indicated that the delegation of authority to the Department did not act completely to absolve local municipalities of their re-

sponsibilities regarding traffic-control signals.

The record shows that a large number of written agreements have been entered into between the Department and each of the plaintiffs. Generally these contracts all provide that the traffic signals installed thereunder shall remain the property of the Department. In addition, each of the plaintiffs agree therein to pay all of the cost of supplying the necessary electricity for operation of the signals.

■ The fact that the parties hereto, presumably with knowledge of the pertinent statute, entered into agreements specifically providing the cost of the necessary electrical energy is to be borne by the plaintiffs is a strong indication of their mutual conclusion that the Department has no statutory duty to provide the necessary electricity. "The law, including statutes, existing at the time and place of the making of a contract is to be considered a part of that contract to the same extent as though expressly referred to or incorporated within its terms." *Polytechnical Consultants v. Lind Plastic Products, Inc.* (1980), 82 Ill. App. 3d 472, 474, 402 N.E.2d 869.

■ Along these same lines, the Department is the agency delegated to administer the statute before us. Consequently the interpretation of that statute in every day use by the Department should be afforded a considerable amount of deference. This factor, combined with the length of time that the pertinent statute has been in effect without legislative amendment, constitutes a potent argument to indicate the proper meaning of the statute as above set forth. *Pielet Brothers Trading, Inc. v. Pollution Control Board* (1982), 110 Ill. App. 3d 752, 756, 442 N.E.2d 1374.

Additionally, one of the most important and decisive factors here is the meaning of the words used in the pertinent statute as above defined. The supreme court has stated, "It is well settled that, in construing a statute, the language should be given its plain and ordinary meaning." (*City of East Peoria v. Group Five Development Co.* (1981), 87 Ill. 2d 42, 46.) This court is bound to follow the precise language contained in the statute. Our duty in this regard has been well stated in *Droste v. Kerner* (1966), 34 Ill. 2d 495, 504, 217 N.E.2d 73, *appeal dismissed* (1967), 385 U.S. 456, 17 L. Ed. 2d 509, 87 S. Ct. 612:

> "Courts have no legislative powers, and their sole function is to determine and, within the constitutional limits of the legislative power, give effect to the intention of the lawmaking body. We will not and cannot inject provisions not found in a statute, however desirable or beneficial they may be. [Citations.]"

■ It follows that this court is required to reverse the order ap-

pealed from and to remand the case with directions that an order be entered declaring the rights of the parties and providing that the Department is not legally obliged to pay the cost of electricity as required for operation of traffic-control signals.

Reversed and remanded with directions.

McGLOON and CAMPBELL, JJ., concur.